LIVINGSTONE v DEPARTMENT OF TREASURY

Docket No. 83616. Argued October 4, 1989 (Calendar No. 2). Decided
June 12, 1990.

The Department of Treasury issued a notice of intent to assess
the St. Clair Rubber Company for use taxes for the period
July 1, 1978, through June 30, 1981. A hearing referee final-
ized the amount of the deficiency, and the decision was not
appealed. However, St. Clair failed to remit the taxes and
interest due. Thereafter, pursuant to MCL 205.96(3); MSA
7.555(6)(3), the department issued notices of personal liability,
individually against Seabourn S. Livingstone, sole owner of St.
Clair and chairman of the board and treasurer, and against H.
Gordon Wood, secretary of the corporation, for the unpaid
assessment against St. Clair. The Tax Tribunal extinguished
the liability of Wood and affirmed the liability of Livingstone,
concluding that an unappealed final assessment becomes due
and payable by operation of law, and, because the corporate
officer's liability for the overdue tax is derivative in nature, the
corporate officer is bound by the failure of the corporation and
cannot raise the bar of the statute of limitations, claim exemp-
tion, or challenge the method of computation once the assess-
ment is final. The Court of Appeals, WAHLS, P.J., and MAHER
and G. S. ALLEN, JJ., affirmed, holding that a corporate officer's
liability for unpaid corporate taxes was not separate and dis-
tinct from the assessment against the corporation and thus
that separate notice of an unfiled return or an unpaid tax was
not required when the officer, because of corporate position,
already knew or should have known that the tax had not been
paid. The Court held further that the finality of the assessment
upon the corporation barred the corporate officer from contest-
ing the amount of taxes owed (Docket No. 95858). The peti-
tioner appeals.

The Supreme Court held:

1. The liability of responsible corporate officers for the pay-
ment of corporate taxes is not separate and distinct from that
of the corporation.

2. Separate notice of liability of an officer is not required.

3. The decision of the Court of Appeals is affirmed.

Justice ARCHER, joined by Justice CAVANAGH, stated that the statute of limitation provided in the Use Tax Act, MCL 205.100(3); MSA 7.555(10)(3), does not apply to derivatively liable corporate officers, and thus does not bar a majority of the tax debt imposed upon the officer. The Department of Treasury is not required to provide individual notice of personal liability to derivatively liable officers.

MCL 205.96(3); MSA 7.555(6)(3) provides that where a corporation fails for any reason to file required use tax returns or to pay the taxes due, any of its officers having control or supervision of, or who are charged with the responsibility for, making returns and payments may be held personally liable for the failure. Personal tax liability will not attach to corporate officers who simply have significant involvement in the financial affairs of a corporation; the involvement must be tax specific. In this case, the petitioner was responsible for making the returns and payments of taxes for St. Clair and was therefore derivatively liable under the statute for the failure to pay the taxes. The term "liable for the failure" plainly carries with it the notion that "failure" is the condition necessary in order for the provision to be activated. Thus, it is the fact of St. Clair's failure to pay its requisite taxes from which the petitioner's liability derives.

MCL 205.100(3); MSA 7.555(10)(3) provides for a four-year limitation period for the assessment of the use tax. When construed with MCL 205.96(3); MSA 7.555(6)(3), the statute imposing the corporate tax liability, the limitation provision is seen to apply only to those persons, i.e., private corporations, who store, use, or consume tangible personal property or services. The corporate officer, although charged with the responsibility for making returns and payments of corporate taxes, is nonetheless not the taxable actor and cannot be assessed. Thus, the operation of the use tax limitation period is restricted to the corporate entity subject to the tax.

A corporate officer who is liable under MCL 205.96(3); MSA 7.555(6)(3) necessarily must have been intimately involved in the corporation's failure to pay taxes and consequently does not need formal notice of such liability to be able to defend in a subsequent action. Officers who personally are made aware of corporate tax deficiencies and who, through neglect or intent, fail to make provisions for the satisfaction of the corporate tax debt when due, cannot be allowed to take advantage of their own omissions. The clear pronouncement of the statute is

sufficient notice that a duty exists ultimately to remit the tax liability to the state.

Chief Justice RILEY, joined by Justice BOYLE, concurred in the result only.

Affirmed.

Justice LEVIN, joined by Justices BRICKLEY and GRIFFIN, dissenting, stated that the four-year statute of limitation provided in the Use Tax Act, MCL 205.100(3); MSA 7.555(10)(3), applies not only to an assessment against a corporation, but also to an assessment against a responsible officer. The statute begins to run, both for an assessment against a responsible officer as well as an assessment against a corporation, respecting unpaid use tax liability accruing in a particular month, on the fifteenth day of the following month when the corporation fails to file the required return or pay the tax, and is not tolled as to an assessment against a responsible officer until the Department of Treasury either gives notice of an intent to assess or makes an assessment.

Section 6(3) of the Use Tax Act provides that an officer having control or supervision of, or responsibility for, making the corporation's use tax returns and payments is personally liable for the failure of the corporation to file the required return or pay the tax. It directs further that the sum due for the liability may be assessed and collected in accordance with the procedures of assessment applicable under the revenue division act. Section 10(3) of the Use Tax Act does not differentiate between the procedures applicable to the assessment of corporations and those applicable to the assessment of corporate officers.

The failure for which the responsible officer is personally liable is not the failure of the corporation to pay an assessment; it is the failure of the corporation to file the required returns or to pay the tax due. The statute does not require that the corporation be assessed as a precondition to the liability of the corporation or of the responsible officer, or that the department assess or seek to collect from the corporation before proceeding against the officer.

Knowledge of a potential claim or action does not toll a statute of limitation. It is the commencement of an action and not the knowledge of potential liability that tolls the statute. In this case, although notice to the corporation may have been constitutionally adequate, it was statutorily inadequate. Under the statutory scheme, the petitioner was subject to assessment and thus entitled to the statutorily prescribed procedural protections of the assessment process, including notice of intent to

assess. Notice of intent to assess the corporation was not notice to the petitioner for the purpose of the statutorily required notices or for the purpose of tolling the statute of limitation. The decision of the Court of Appeals should be reversed.

Justice LEVIN, in a separate opinion, stated that § 6(3) of the Use Tax Act provides that responsible officers may be personally liable for the tax due and may be assessed and have the tax collected as provided in § 10 of the act within the four-year period of limitation. By enacting § 27a of the general revenue provisions two years before the repeal of § 10(3), the Legislature made explicit its intent that the statute of limitation applies to the assessment of officers as well as to the assessment of corporations.

The statutorily prescribed procedure for assessment and collection is based on the premise that a responsible officer is at least deemed to be a taxpayer for the purpose of that procedure. To declare that a responsible officer is not a taxpayer is to hold in effect that an assessment against a responsible officer is not to be made pursuant to that procedure, that a responsible officer has no right to stand before the Supreme Court on appeal from the assessment, and that the department could not, under the revenue division act, demand, levy and sell the officer's property for nonpayment. That a responsible officer becomes liable on the fifteenth day of each month when the corporation fails either to file the required return or pay the tax is compatible with the legislative purpose of creating a derivative source for payment of unpaid taxes.

The petitioner in this case, as a responsible officer subject to assessment, was entitled to notice pursuant to the statute. Requiring the giving of notice to responsible officers within the four-year limitation period preserves the department's rights against responsible officers. The statutory scheme does not differentiate between the procedures applicable to the assessment of corporations and those applicable to the assessment of responsible officers. To hold that the statute of limitation is inapplicable to the assessment of responsible officers is to allow such officers to be subject to an indefinite threat of liability.

169 Mich App 209; 426 NW2d 184 (1988) affirmed.

*Bodman, Longley & Dahling* (by *Michael B. Lewiston, Christopher J. Dine,* and *Leonard K. Berman*) for the petitioner.

*Frank J. Kelley,* Attorney General, *Louis J.*

*Caruso,* Solicitor General, and *E. David Brockman*
and *Shirley L. Palardy,* Assistant Attorneys General, for the respondent.

ARCHER, J. We granted leave to consider
whether the statute of limitations bars the majority of the alleged use tax[1] sought to be assessed
against the derivatively liable corporate officer,
where there was no issuance of a notice of intent
to assess against the officer and where the notice
of final assessment was issued more than four
years after a majority of the assessment and the
taxable period.

We would hold that the use tax statute of limitation found in MCL 205.100(3); MSA 7.555(10)(3)[2]

---

[1] The phrase "majority of the alleged use tax" can be summed up as
follows:

St. Clair Rubber Company, as a corporate entity, was assessed for
use taxes on December 10, 1981, for the three year period beginning
July 1, 1978, through June 30, 1981. The appellant believes that
because he received the first notice of *personal* liability on July 27,
1984, that under the four-year statute of limitations found in MCL
205.100(3); MSA 7.555(10)(3) he should only be liable for the taxes
owing from July of 1980, thus extinguishing his obligation to pay the
taxes owing for years 1978 and 1979. Accordingly, the appellant
asserts that if the statute of limitations is found to be applicable to
derivatively liable corporate officers, that "a majority" of his tax
liability should be barred. Thus, contrary to the belief of the dissent,
Mr. Livingstone's attempted application of the corporate limitations
period to corporate officers is, as a practical matter, an attack on
challenge to the "amount" of the assessment against St. Clair, for
which, of course, Livingstone became liable upon St. Clair's failure to
pay. See MCL 205.96(3); MSA 7.555(6)(3).

[2] MCL 205.100(3); MSA 7.555(10)(3) provided:

A deficiency, interest, or penalty shall not be assessed after
the expiration of 4 years from the date set for the filing of the
required return or the date the return was filed, whichever is
later. The taxpayer shall not claim refund of any amount paid
to the department after the expiration of 4 years from the date
of payment. A taxpayer shall not assign a claim against the
state to any other person. If a person subject to tax under this
act shall fraudulently conceal liability for the tax or a part of
the tax, the revenue commissioner, upon discovery of the fraud
and within 2 years thereafter, shall proceed to assess the tax
with penalties and interest as provided, computed from the

has no application to derivatively liable corporate officers. Consequently, the limitation period does not bar a majority of the tax debt imposed upon the officer. Further, we would hold that the Department of Treasury is not required to send individual notice of personal liability to derivatively liable officers. Accordingly, the decision of the Court of Appeals is affirmed.

FACTS

Appellant Seabourn S. Livingstone was the sole owner, chairman of the board of directors, and treasurer of the St. Clair Rubber Company, a corporation subject to the Use Tax Act.[3] Pursuant to the act,[4] the appellee, Department of Treasury,

---

date on which the tax liability originally accrued and the tax, penalties, and interest shall become due and payable after notice and hearing as provided.

We recognize that as of December 21, 1988, MCL 205.100(3); MSA 7.555(10)(3) was amended, apparently, eliminating the four-year limitation period. However, in order to address the issues appealed, we have based our analysis on the provision as it existed when the notice of intent to assess St. Clair Rubber Company was originally rendered, that being December 10, 1981. The provision presently provides:

Claims for refund pursuant to the 1988 amendatory act amending section 2 shall be filed not later than March 31, 1989. The approved refunds shall be paid without interest. The department shall not pay refunds totaling more than $1,000,000.00 in any 1 fiscal year, unless the single business tax act, Act No. 228 of the Public Acts of 1975, being sections 208.1 to 208.145 of the Michigan Compiled Laws, is amended to impose a 1-year surcharge on the business activity of contract construction to recover the cost of the refunds.

[3] The Use Tax Act is found in MCL 205.91 et seq.; MSA 7.555(1) et seq. St. Clair was subject to this act as a result of its use of electrical power and its consumption of gas.

[4] MCL 205.21(1); MSA 7.657(21)(1) provides:

If a person fails or refuses to make a return as required, in whole or in part, or if the department has reason to believe that a return made does not supply sufficient information for

issued a notice of intent to assess St. Clair as a result of a use tax audit deficiency for the period July 1, 1978, through June 30, 1981.[5]

St. Clair timely appealed the assessment to a Department of Treasury hearing referee. On July 12, 1982, the referee issued a recommendation that the intent to assess be finalized for the amount of the deficiency deemed owing.

The referee's decision was not appealed.[6] As a result, on September 29, 1982, under the authority of MCL 205.22(2); MSA 7.657(22)(2),[7] the department issued a notice of final assessment against St. Clair. St. Clair, nonetheless, failed to remit the taxes and interest due.

In    accordance    with    MCL    205.96(3);    MSA

an accurate determination of the amount of tax due, the department may obtain information on which to base an assessment of the tax. The department, by its duly authorized agents, may examine the books, records, and papers and audit the accounts of a person or any other records pertaining to the tax. As soon as possible after procuring information, the department shall assess the tax determined to be due and shall notify the taxpayer of the assessed amount and the specific reasons for the assessment.

[5] The amount of the tax assessment was $9,053.18, while the interest accrued at that time, amounted to $1,736.82, totaling $10,790. At the time of the application to this Court, the accrued interest had increased to $3,161.22, thus adjusting the amount due to $12,214.40.

[6] MCL 205.22(1); MSA 7.657(22)(1) provides, in pertinent part:

A person aggrieved by an assessment, decision, or order of the department may appeal the contested portion of an assessment, decision, or order to the tax tribunal within 30 days, or to the court of claims within 90 days after the assessment, decision, or order.

[7] MCL 205.22(2); MSA 7.657(22)(2) provides:

The assessment, decision, or order of the department, if not appealed in accordance with this section, shall be final and shall not be reviewable in any court by mandamus, appeal, or other method of direct or collateral attack.

7.555(6)(3),[8] the department issued notices of personal liability, individually, against appellant, Seabourn S. Livingstone, and H. Gordon Wood, the named secretary of the corporation, for the unpaid assessment against St. Clair. In a consolidated effort, both Livingstone and Wood appealed their liability to the Michigan Tax Tribunal.

On September 23, 1986, the tribunal issued its opinion and judgment. Citing *Metro GMC Truck Center, Inc v Dep't of Treasury,* 4 MTTR 54, 56 (Docket No. 74377, September 6, 1985), and *Rowland v Collins,* 48 Ohio St 2d 311; 358 NE2d 582 (1976), the tribunal concluded,

> "[A]n unappealed final assessment becomes due and payable by operation of law. Because the corporate officer's liability for the overdue tax is derivative in nature, the corporate officer is bound by the oscitancy of the corporation." Petitioners, therefore can not raise the statute of limitations bar and exemption claim, nor challenge the method of computation once the assessment is final. The position of primary or secondary debtor has no [effect] on the right of the Petitioners to challenge the makeup of the assessment. The finality of the assessment is the factor which establishes a bar to such a challenge.[9]

---

[8] MCL 205.96(3); MSA 7.555(6)(3) provides:

> If a corporation licensed under this act fails for any reason to file the required returns or to pay the tax due, any of its officers having control, or supervision of, or charged with the responsibility for making the returns and payments shall be personally liable for the failure. The dissolution of a corporation shall not discharge an officer's liability for a prior failure of the corporation to make a return or remit the tax due. The sum due for such a liability may be assessed and collected as provided in section 17.

[9] The tribunal, further, extinguished the liability of secretary H. Gordon Wood for St. Clair's delinquent taxes, on the basis of the lack of evidence of Wood's control or supervision of St. Clair's tax payment activities.

On October 13, 1986, Seabourn Livingstone filed a claim of appeal, arguing that assessments against derivatively liable corporate officers were separate and distinct from those against the corporation, as was the officer's right to assert the statute of limitations. The Court of Appeals affirmed the decision of the Tax Tribunal, holding that a corporate officer's liability for unpaid corporate taxes was not separate and distinct from the assessment against the corporation, and thus separate notice of an unfiled return or an unpaid tax was not required when the officer, by his responsible corporate position, already knew or should have known that the tax had not been paid. Further, the Court held that the "finality" of the assessment on the corporation barred the corporate officer from contesting the amount of taxes owed.[10] We subsequently granted leave to appeal.[11]

I

A

The issue before us involves the interplay between two provisions of the Use Tax Act. MCL 205.91 *et seq.*; MSA 7.555(1) *et seq.* The specific provisions at issue provide, in pertinent part:

> If a corporation licensed under this act fails for any reason to file the required returns or to pay the tax due, any of its officers having control, or supervision of, or charged with the responsibility for making the returns and payments shall be personally liable for the failure. [MCL 205.96(3); MSA 7.555(6)(3).]

---

[10] *Livingstone v Dep't of Treasury,* 169 Mich App 209; 426 NW2d 184 (1989).

[11] *Livingstone v Dep't of Treasury,* 432 Mich 891 (1989).

A deficiency, interest, or penalty shall not be assessed after the expiration of 4 years from the date set for the filing of the required return or the date the return was filed, whichever is later. [MCL 205.100(3); MSA 7.555(10)(3).]

The first, and perhaps, least difficult aspect of the task before us concerns the determination of exactly when and under what circumstances a corporate officer may be held personally liable for unpaid corporate use taxes. In addressing this question, the Court of Appeals in *Peterson v Treasury Dep't,* 145 Mich App 445, 450; 377 NW2d 887 (1985), held:

In order to hold a person personally liable for a corporation's tax liability under [MCL 205.96(3); MSA 7.555(6)(3)], the Department of Treasury must first show that the person is an officer of the corporation. Then it must show either (1) that this officer has control over the making of the corporation's tax returns and payments of taxes; or (2) that this officer supervises the making of the corporation's tax returns and payments of taxes; or (3) that this officer is charged with the responsibility for making the corporation's returns and payments of taxes to the state. [See also *Keith v Treasury Dep't,* 165 Mich App 105, 108; 418 NW2d 691 (1987).]

We agree that personal tax liability will not attach to corporate officers who simply have significant involvement in the financial affairs of a corporation. The involvement must be tax specific.

In this case, the appellant's "responsibility for making the returns and payments" of taxes pursuant to MCL 205.96(3); MSA 7.555(6)(3) is uncontested.[12] It was further conceded at oral argument

_____

[12] See Michigan Tax Tribunal Opinion and Judgment at 5. The

that the statute renders the appellant "derivatively" liable. On that account, the appellant cites the factually similar, *Bloom v United States,* 272 F2d 215, 221 (CA 9, 1959), in which the Court of Appeals for the Ninth Circuit espoused the following supposition regarding derivatively liable parties:

> In our view, [the applicable statutory section] imposes a separate and distinct liability upon the officer of the corporation who has the duty or is responsible for the collection and payment of the tax and who willfully fails either to collect the tax or to pay it over. While this liability is denominated "penalty" it is "to be assessed and collected in the same manner as taxes are assessed and collected." While it might be said that the assessment made on appellant is derivative of the assessments made on the corporation, in that they both relate to taxes collected or withheld by the corporation, the liability imposed upon appellant by [the applicable statute] is statutory and in such cases the statutory limitations are controlling.

The conclusory nature[13] of the *Bloom* court's characterization and application of the terms "derivative," "solely of derivative character," and "separate and distinct," unfortunately diminishes their effect here. Hence, we believe that as a preliminary matter the term "derivative liability," as it pertains to corporate officers, in this context, ought to be clearly defined and effectively applied to the facts at bar.

The *Random House Dictionary of the English*

appellant did not contest the tribunal's finding in the Court of Appeals or in this Court.

[13] The linchpin of the *Bloom* court's belief that corporate officer liability is not "solely of derivative character," appears to be the fact that the liability imposed is "statutory." However, because the court failed to cite any authority or to provide any explanatory support for its conclusions, we find its statement unhelpful.

*Language* (2d ed, unabridged), defines the term "derivative," as "not original; secondary." Black's Law Dictionary (5th ed) offers, "Coming from another; taken from something preceding; secondary. That which has not its origin in itself, but owes its existence to something foregoing. Anything obtained or deduced from another."

Our application of the preceding to the present facts leads us to the conclusion that the liability imposed upon the appellant was, indeed, strictly and solely derivative for several reasons. First, in 1923, St. Clair Rubber Company established itself as an incorporated entity under the laws of our state. Arguably, one of the most attractive features of modern incorporation is the opportunity for individuals to avail themselves of limited liability. See Henn & Alexander, Law of Corporations (3d ed), § 79, p 148. When a business person, such as the appellant, cognitively makes the decision to incorporate, we believe, he also cognitively enjoys the benefit of having shielded himself, in however limited a sense, from the direct or primary responsibility to answer, legally, in his own name.

Second, the tax liability imposed under MCL 205.96(1); MSA 7.555(6)(1), was created by St. Clair Rubber Company, the corporate entity, by its "storage, use, or consumption of " tangible personal property or services. See MCL 205.91 *et seq.*; MSA 7.555(1) *et seq.* The ensuing corporate taxation was not based on or directed at the activities of Seabourn Livingstone, the individual. The responsibility for the tax originated from acts "solely" attributed to the entity, St. Clair Rubber Company. St. Clair, and not Mr. Livingstone, was the principal tax actor and, hence, the taxpayer.

Finally, MCL 205.96(3); MSA 7.555(6)(3) expressly provides: "any of its officers . . . shall be

personally liable for the *failure.*" (Emphasis added.) The statute does not say "shall be personally liable for the *taxes,*" so as to create the arguable "separate and distinct" liability, suggested in *Bloom, supra.* The phrase "liable for the failure" plainly carries with it the notion that *failure* is the condition necessary to be fulfilled in order for the provision to be activated. Thus, in this case, it is the fact of St. Clair Rubber Company's failure[14] to pay its requisite taxes, that provides the fabric from which the appellant's liability derives.

[14] The dissent expresses the view that the term "failure" to pay the requisite taxes refers to each time a corporation fails to file a return or pay taxes "on or before the fifteenth day of each calendar month." MCL 205.96(1); MSA 7.555(6)(1). Accordingly, the dissent believes § 6(3) derivative liability is triggered each time a corporation fails to so file or pay. We disagree. It is our belief that the Legislature intended § 6(3) derivative liability to be activated following the allotment of a full and fair opportunity for a corporation to file and pay taxes, either voluntarily, as per MCL 205.96(1); MSA 7.555(6)(1) or following MCL 205.21(1) and (2); MSA 7.657(21)(1) and (2), assessment and levy. We believe adoption of the literal reading urged by the dissent, i.e., the random, monthly activation of § 6(3) liability, so as to create responsibility for tax payment in the corporation one month, and in the derivatively liable officer the next, etc., would mock the purpose of the provision itself. For we agree that "[w]hile the intention of the legislature must be ascertained from the words used to express it, the manifest reason and obvious purpose of the law should not be sacrificed to a literal interpretation of such words." 2A Sands, Sutherland Statutory Construction (4th ed), § 46.07, p 110.

In the present case, St. Clair failed to file and pay "on or before the fifteenth day of each calendar month," for three years. Accordingly, the department assessed St. Clair for the three years it had been tax deficient. MCL 205.21(1); MSA 7.657(21)(1). The taxpayer, St. Clair, clearly availed itself of the procedural avenues for review and evaluation in accordance with MCL 205.21(2); MSA 7.657(21)(2) and following a final determination of the taxes due, St. Clair, indeed, still failed to file, pay, or even appeal further. It was not until the assessment amount was deemed "final" that the appellant received notice of his personal, derivative liability. We believe the procedure followed by the department reflected a reasonable interpretation of the legislative scheme in operation here. Accordingly, we do not believe corporations and corporate officers can be "assessed" at the same time because § 6(3) liability cannot attach to a corporate officer until the provisions found in MCL 205.21(1) and (2); MSA 7.657(21)(1) and (2) have been fairly and fully availed and any assessments made thereunder, deemed final.

B

Moving to the more difficult issues presented by this case, we next address whether the four-year limitation period for the assessment of use taxes is applicable to a corporate officer who has been held personally liable for use taxes his corporation failed to pay, and whether the department is required to send individual notice of personal tax liability to corporate officers.

The appellant argues that the language "*shall not be assessed* after the expiration of 4 years," found in MCL 205.100(3); MSA 7.555(10)(3), should be interpreted to preclude assessment against derivatively liable corporate officers. (Empahsis added.) The appellant also believes that the department should be required to send individual notice of personal tax liability to corporate officers held so liable. To the contrary, the department asserts that because the original assessment against St. Clair Rubber Company became "final" on September 29, 1982, the appellant cannot collaterally attack the amount due for any reason, including the statute of limitations. The department further asserts that because the appellant personally received notice of his corporation's tax deficiency, the necessity for sending individual notice of liability was obviated.

As noted by the Tax Tribunal and the Court of Appeals, this case poses an issue of first impression in this state. Therefore, our consideration encompasses a discussion of the rules regarding the interpretation and applicability of statutes of limitations, the direction taken by our sister courts in addressing statutes of limitations and the requirement of individual notice, as well as the policy implications any decision by this Court may have concerning this issue of great public significance.

## II

### STATUTES OF LIMITATION

#### A

The limitation provision at issue was enacted to govern the time in which the Department of Treasury could assess use taxes. With specific regard to the construction of statutes of limitation, this Court in *McKisson v Davenport,* 83 Mich 211; 47 NW 100 (1890), reasoned that statutes of limitation should be construed in a manner that best effectuates the policies the Legislature intended to promote. Furthermore, whenever dismissal of an action filed beyond a statute of limitations would not further the Legislature's objectives in proscribing the limitation period, a plaintiff should be given an opportunity to assert his claim. 54 CJS, Limitation of Actions, § 3, pp 17-18, n 19, citing *Platoro Ltd, Inc v Unidentified Remains of a Vessel,* 614 F2d 1051 (CA 5, 1980).

In *Lenawee Co v Nutten,* 234 Mich 391, 396; 208 NW 613 (1926), we further acknowledged that "[i]n placing a construction upon the language of [a statute of limitation], we should . . . have in mind the purpose of such statutes." In *Sproat v Hall,* 189 Mich 28, 32; 155 NW 361 (1915), we determined that the "whole chapter" in which a statute of limitation was contained, was "to be read as one act, with its several parts and clauses mutually acting on each other as their sense requires."

Correspondingly, Sands advises, "whenever the legislature enacts a provision it has in mind previous statutes relating to the same subject matter," and "legislation is never written on a clean slate, nor is it ever read in isolation or applied in a vacuum." 2A Sands, Sutherland Statutory Construction (4th ed), §§ 51.02, 53.01, pp 453, 549.

It has been universally held that statutes of

limitation sought to be applied to bar rights of the government must receive a strict construction in favor of the government. See *Badarroco v Comm'r of Internal Revenue,* 464 US 386, 391-392; 104 S Ct 756; 78 L Ed 2d 549 (1983) (When a taxpayer files a fraudulent return, taxes may be assessed "at any time" regardless of whether the limitations period has run). Furthermore, the United States Court of Appeals for the Fifth Circuit, observed that "limitation statutes barring the collection of taxes otherwise due and unpaid are strictly construed in favor of the government." *Lucia v United States,* 474 F2d 565, 570 (CA 5, 1973) (A statute of limitations for excise wagering tax was held to be inapplicable because the extent to which assessments are barred is exclusively controlled by Congress; there is no fundamental right to have taxes assessed and collected within any period of limitations). See also *McDonald v United States,* 315 F2d 796, 801 (CA 6, 1963) (A statute of limitations did not bar assessment of excise taxes where no return was filed; a limitation barring collection of taxes must receive strict construction in favor of the government). *Pacific Coast Steel Co v McLaughlin,* 61 F2d 73, 75 (CA 9, 1932) (Statutes of limitation barring the collection of income and excess profit taxes that are justly due and unpaid must receive a strict construction in favor of the government). *Loewer Realty Co v Anderson,* 31 F2d 268, 269 (CA 2, 1929) (Statutes of limitation barring the collection of income taxes must receive a strict construction in favor of the government such that collection after the expiration of the limitation period is not barred).

B

The appellant's contention that the limitation

period should be deemed applicable to any person "assessed" thereunder, is based, primarily, on the belief that the sentence containing the four-year period makes no internal reference to whom it should apply, i.e., the sentence itself contains no limiting words like "against *the* taxpayer."[15] However, viewing the limitation statute in the light most favorable to the Department of Treasury, we find significant the fact that succeeding sentences in the provision do expressly refer to "*the* taxpayer" and the "*person* subject to tax under this act." MCL 205.100(3); MSA 7.555(10)(3). (Emphasis added.) These specific references throughout the whole of the provision dissuade us from believing that their absence from the seminal sentence prescribe, exclusively, to whom the provision should apply. Furthermore, we believe their inclusion is indicative of the Legislature's intent that the dictates found therein be directed, not at "*any* person" but at "*the taxpayer*."

The dissent believes that derivatively liable corporate officers are "taxpayers" under the statutory scheme in operation here. In principal support for

---

[15] The dissent, further, cites *Allan v United States,* 386 F Supp 499 (ND Tex, 1975), in support of the notion that a derivatively liable corporate officer *is* a taxpayer. However, we distinguish *Allan* on the basis of several facts. *Allan* concerned facts governed by 26 USC 6672, a federal tax statute, very different from MCL 205.96(3); MSA 7.555(6)(3) and MCL 205.22; MSA 7.657(22), i.e., the right to appeal under the federal scheme, apparently, must be limited to those deemed "taxpayers." Furthermore, the court in *Allan* specifically limited its reasoning to a "§ 6672 setting." *Id.* at 504. Likewise, *Williams v United States,* unpublished memorandum opinion of the United States District Court for the Northern District of Illinois, decided October 6, 1983 (Docket No. 82 C 3505), and *Holcomb v United States,* 622 F2d 937 (CA 7, 1980), each cited by the dissent, as well, analyze and construe the federal tax scheme as it relates to waiver forms. Finally, in *Calderone v United States,* 799 F2d 254 (CA 6, 1986), the court reasoned that corporate officers and corporate entities can be assessed at the same time on the basis of a "separate and distinct" liability analysis. The case at bar does not involve waiver forms or "separate and distinct" liability. We, therefore, find the federal dicta cited by the dissent neither binding nor persuasive. See also n 26.

this assertion, the dissent contends that it is the officer's status as a "taxpayer" that provides the right of appeal in this Court. The dissent further believes that corporate officers are "assessed" when their tax liability arises under MCL 205.96(3); MSA 7.555(6)(3). We disagree with both propositions.

We have concluded that because § 10(3) refers to "*the* taxpayer" and the "*person* subject to tax," the Legislature intended § 10(3) to apply solely to principle tax actors. (Emphasis added.) Accordingly, a person who becomes liable either primarily or derivatively *can* be termed, in the most literal sense, a "taxpayer," i.e., one who pays taxes. However, this does not diminish or effect the plain truth that Mr. Livingstone, in his status as a derivatively liable corporate officer under § 6(3), did not engage in the taxable acts out of which the principle or primary tax liability in this case was born. The appellant simply cannot occupy the same taxpayer status as St. Clair Rubber Company. Therefore, the limitations period in § 10(3) was drafted with the intent that it apply narrowly to the events surrounding the taxable activity from which the principle assessment against St. Clair was rendered. Thus, contrary to the dissent, our conclusion that the appellant is not a "taxpayer" does not rest feebly and trivially upon hollow word usage or placement, but on a substantively sound and well-founded premise.

Accordingly, St. Clair, the tax actor, was "assessed" in accordance with MCL 205.21(1); MSA 7.657(21)(1); St. Clair was sent notice of the department's intent to levy; St. Clair requested and received an informal conference at which the hearing officer affirmed the assessment in accordance with MCL 205.21(2); MSA 7.657(21)(2); St. Clair refused or failed to appeal the department's final

determination as provided in MCL 205.22; MSA 7.657(22), etc. The procedures accorded the appellant here were the department's notification to him that his personal liability had been triggered and his right of appeal to the Tax Tribunal, the Court of Appeals, and finally here, in accordance with MCL 205.22(1); MSA 7.657(22)(1).[16] Thus, we disagree with the dissent's blanket assertion that "the responsible officer in this case was accorded procedures applicable to 'taxpayers' throughout the *whole* assessment and collection process." See *post,* p 824, n 22. (Emphasis added.)

Moreover, the word "assess," as used in the phrase "shall not be assessed," encompasses a great deal more than presentment and collection[17] of a tax bill. As a practical matter, in order for a party to be "assessed," the department must: identify the taxable party, categorize the taxable activity, estimate the tax value associated with the activity, measure the quantity of activity, and fix the amount of taxes due and payable to the state.[18]

---

[16] In terms of a corporate officer's right to be before this Court, we note that MCL 205.22; MSA 7.657(22) explicitly begins, "A *person* aggrieved by an assessment, decision, or order of the department . . . ." (Emphasis added.) We do not believe the provision either states or implies that the aggrieving "assessment" is one necessarily made as against the *person* appealing.

We believe St. Clair *and* the appellant both find their rights to appeal in § 22. In light of the Legislature's decision to incorporate the term "person aggrieved" into the appeal provision, as opposed to uniformly utilizing the term "taxpayer," we likewise do not believe the Legislature intended to allow appeals by "persons aggrieved" only to the Tax Tribunal or the Court of Claims, while affording "taxpayers" with appeals to the Court of Appeals and this Court. Indeed, the ability to appeal from a final determination of the Tax Tribunal is limited only by its own self-contained statutory framework. See MCL 205.753(2); MSA 7.650(53)(2). Accordingly, the appellant, Mr. Livingstone, is appropriately before this Court as a person aggrieved by an "assessment" made against St. Clair.

[17] Importantly, the use tax limitation period contains the phrase "shall not be assessed" and not "shall not be collected."

[18] Our reasoning that appellant Livingstone could not be "assessed" was deduced principally from our determination that the liability

Accordingly, the word "assessed," as used in the instant provision, refers to a process which has its anchor in the tax activities of "*the* taxpayer," while presentment and collection represent only ministerial steps in the procedure. In the present case, the Department of Treasury properly "assessed" a tax deficiency against St. Clair Rubber Company within the constraints of MCL 205.100(3); MSA 7.555(10)(3). However, upon the happening of the condition, i.e., nonpayment of the taxes due, the department sought to enforce and collect the debt created by St. Clair's default in accordance with MCL 205.96(3); MSA 7.555(6)(3).[19]

---

imposed upon him was unequivocally derived from that which was first imposed upon St. Clair. The dissent wishes to render the term "derivative liability" a nullity when it asserts that a corporate officer's liability may be labeled "derivative" but that the officer is to be "assessed" a "separate and distinct" indebtedness. To the contrary, we believe application of the term "derivative liability" to corporate officers under MCL 205.96(3); MSA 7.555(6)(3), directs that *every* facet of an officer's resultant financial responsibility, including being "assessed," derives not from the officer's acts, but from the corporation's taxable business functioning.

[19] The dissent curiously believes that the Legislature "intended to refer to MCL 205.100; MSA 7.555(10)," or § 10, instead of MCL 205.107; MSA 7.555(17), or § 17, when it drafted the sentence, "The sum due for such a liability may be assessed and collected as provided in section 17," found in § 6(3). It is upon this creative premise of "legislative mistake" that the dissent hinges its assertion that derivatively liable officers are "assessed" for taxes in the same manner as principal corporate taxpayers. It is our belief, however, that this assertion cannot be proved or disproved by this Court, as such matters can only be appropriately resolved by the Legislature.

However, we note that § 17 has been repealed. Moreover, before its revocation, the provision read as follows:

> Any person who fails or refuses to make any return required under this act or who makes any false or fraudulent return or false statement in any return, with intent to defraud the state or evade payment of the tax or any part thereof imposed by this act, or who aids or abets another in any attempt to evade the payment of the tax or any part thereof as imposed by this act, *or any person or president, vice-president, secretary or treasurer of any company or association who makes or permits to be made for any person, company or association any false return or any false statement in any return required in this*

C

Any interpretation or construction of the use tax limitation period must be done with comprehensive and simultaneous examination of statutes with which it must function. Hence, our task here is not to construe and interpret the limitation period in isolation. See *Hall, supra* at 32. Our consideration necessarily includes the statute under which the tax assessment liability was imposed, which, in this case, is § 6(3). See 2A Sands, Sutherland Statutory Construction (4th ed), §§ 51.02, 53.01, pp 453, 549. Because both provisions are contained in the Use Tax Act, they are to be construed as mutually acting toward the fulfillment of the purpose envisioned by the Legislature in enacting them. See *Nutten, supra* at 396.

The dissent has proposed that the repeal of MCL 205.100(3); MSA 7.555(10)(3) was intentionally preceded by the 1986 addition of MCL 205.27a(2), (5); MSA 7.657(27a)(2), (5) to the Revenue Division of the Department of Treasury.[20]

The dissent contends that the *near* duplicity of the language found in the now repealed § 10(3)

---

*act, with the intent to evade or assist in evading the payment of any tax hereunder,* shall be deemed guilty of a misdemeanor and upon conviction thereof, shall be fined not less than $500.00 nor more than $5,000.00 or imprisoned in the county jail not more than 1 year, or by both such fine and imprisonment in the discretion of the court. In addition to the foregoing penalties, any person who shall knowingly swear to or verify any false or fraudulent return, or any return containing any false or fraudulent statement, with the intent to defraud or to aid, abet or assist in defrauding the state, shall be guilty of the offense of perjury, and, on conviction thereof, shall be punished in the same manner provided by law. [Emphasis added.]

We believe the referenced sentence found in § 6(3) was drafted in order that it be made clear that corporate officers were subject to the same severe penalties as principal taxpayers for tax evasion, etc. Thus, we think the Legislature's intent was clear. Consequently, we find the dissent's assertions of legislative mistake unfounded.

[20] (2) A deficiency, interest, or penalty shall not be assessed

and § 27a(2) necessarily presumes that the legislative intent of the drafters of § 10(3), as well as of § 6(3), can be gleaned from or evidenced by an analysis of subsections 27a(2) and (5). We disagree with this presumption.

Certainly, the Legislature compiled Michigan's tax statutes with the intent of enacting specific provisions directed to particular types and kinds of liabilities. We do not believe the Legislature intended or intimated that subsections 27a(2) and (5) or any provision of the Revenue Division be applied or adopted in the place of provisions specifically enacted under other self-contained tax acts. Our decision in this case is governed by an analysis of the interrelationship between §§ 6(3) and

after the expiration of 4 years after the date set for the filing of the required return or after the date the return was filed, whichever is later. The taxpayer shall not claim a refund of any amount paid to the department after the expiration of 4 years after the date set for the filing of the original return. A person who has failed to file a return is liable for all taxes due for the entire period for which the person would be subject to the taxes. If a person subject to tax fraudulently conceals any liability for the tax or a part of the tax, or fails to notify the department of any alteration in or modification of federal tax liability, the department, within 2 years after discovery of the fraud or the failure to notify, shall proceed to assess the tax with penalties and interest as provided by this act, computed from the date on which the tax liability originally accrued. The tax, penalties, and interest shall become due and payable after notice and hearing as provided by this act.

(5) If a corporation liable for taxes administered under this act fails for any reason to file the required returns or to pay the tax due, any of its officers having control, or supervision of, or charged with the responsibility for making the returns or payments shall be personally liable for the failure. The signature of any corporate officers on returns or negotiable instruments submitted in payment of taxes shall be prima facie evidence of their responsibility for making the returns and payments. The dissolution of a corporation shall not discharge an officer's liability for a prior failure of the corporation to make a return or remit the tax due. The sum due for a liability may be assessed and collected under the related sections of this act.

10(3) as they read at the time the appellant was aggrieved.

Furthermore, the language appearing in subsections 27a(2) and (5) is not identical to that contained in the provisions of the Use Tax Act. Accordingly, in our view those entities bound by the Use Tax Act should be bound and guided narrowly by the specific provisions of the act itself. We do not believe that it was the Legislature's intent to adopt subsections 2 and 5 in the place of provisions specifically enacted within other self-contained tax acts. Hence, we do not agree that the case at bar was affected in any way by the aforementioned 1986 amendments of the Revenue Division.

The limitation period at issue, now MCL 205.100(3); MSA 7.555(10)(3), was first introduced into the Use Tax Act in 1949. Apparently, rejecting the application of a general civil limitation period to tax assessments, the Legislature felt it necessary to enact a provision specifically designed for tax assessment.

MCL 205.96(3); MSA 7.555(6)(3), the statute imposing corporate tax liability in this case, originally contained no provision for derivative liability. However, in 1971, subsection c, now subsection 3, was enacted. Thus, we may consider that in enacting this provision, the Legislature had in mind matters of monetary recourse and the establishment of derivative resources for tax debt payment.

Construing the statutes together, we conclude that the limitation provision applies only to those "persons," hence, private corporations, see MCL 205.92(a); MSA 7.555(2)(a),[21] who store, use, or consume tangible personal property or services. As

---

[21] As used in this act:

(a) "Person" means an individual, firm, partnership, joint venture, association, social club, fraternal organization, munici-

we noted previously, the corporate officer, although "charged with the responsibility for making returns and payments" of corporate taxes, is nonetheless not the taxable actor and cannot, therefore, be "assessed." The transposition of a tax debt onto a derivatively liable party, irrespective of the terminology used,[22] is an ancillary, ministerial step in the collection process, created, apparently in light of the Legislature's recognition of the need to insure the *payment, collection* or satisfaction of tax deficiencies "assessed" against corporate tax actors. Thus, commensurate with what we deem to be a reasonable interpretive analysis of legislative intent and purpose, we conclude that operation of the use tax limitation period is restricted to the corporate entity "subject to the tax," which, in this case, is St. Clair Rubber Company.[23]

---

pal or private corporation whether or not organized for profit, company, estate, trust, receiver, trustee, syndicate, the United States, this state, county, or any other group or combination acting as a unit, and the plural as well as the singular number, unless the intention to give a more limited meaning is disclosed by the context. [MCL 205.92(a); MSA 7.555(2)(a).]

[22] The appellant noted at oral argument that the Department of Treasury, in its appellate brief, described the July 27, 1984, notice of personal tax liability sent to the appellant as an "assessment." The dissent also emphasized that the department frequently employed the term in describing the corporate officer's indebtedness. Nonetheless, we do not believe word usage, in this instance, is dispositive. We stress that the differentiation we make between assessing corporate entities and transferring tax debts to derivatively liable corporate officers is substantive in nature.

[23] The department's argument that the "finality" of the assessment *amount* against the corporation under MCL 205.22(2); MSA 7.657(22)(2), barred the appellant's effort here to reduce the amount owing, is, we believe, a sound argument, and our decision to address and develop the first impression issue whether MCL 205.100(3); MSA 7.555(10)(3) can be applied to derivatively liable corporate officers was not intended to diminish or nullify its merits. We have chosen, however, to express no opinion as to its import on the facts at bar at

D

Statutes of limitation serve several purposes in jurisprudence. As arbitrary enactments,[24] they are designed to accord and limit a reasonable time within which an action may be brought. As a general rule, the limitation period begins to run at the time when a complete cause of action or right of action accrues or arises or when there is a demand capable of present enforcement. See 54 CJS, Limitation of Actions, § 81, p 117. See also *Howard v General Motors Corp,* 427 Mich 358, 384-385; 399 NW2d 10 (1986).

Statutes of limitation are, in essence, intended to exact diligence in the prosecution of a litigant's claim. Accordingly, "[l]imitation statutes are not enacted for the sake of defeating legal claims, but only to require notice of such claims within a reasonable time and thus guard against the unfair handicaps of defending against unfounded and belated suits." *Lynch v American Motorists Ins Co,* 101 F Supp 946, 949 (ND Tex, 1951).

In the present case, the appellant believes that the limitation period found in § 10(3) applies to corporate officers on the basis of the assumption that corporate officer liability is "separate and distinct." Accordingly, the appellant contends that because he received the first notice of personal liability three years after such notice was sent to St. Clair, he should only be responsible for paying a portion of the taxes owed to the state. However, because we do not believe corporate officer liability to be "separate and distinct," or that § 10(3) applies to such officers, we also do not believe notice,

this time. Thus, contrary to that which appears in the dissent, we express neither approval or disapproval as to the validity of this premise.

[24] See *In re Straight Estate,* 329 Mich 319, 325; 45 NW2d 300 (1951).

other than that sent by the department in this case, is required to be sent to officers liable under § 6(3).

The courts below in their analyses of the notice prong of this action relied principally on three cases: *Van Orman v Indiana,* 416 NE2d 1301 (Ind App, 1981), *Keith v Dep't of Treasury, supra,* and *Ball v Indiana Dep't of Revenue,* 525 NE2d 356 (Ind Tax Ct, 1988). *Van Orman,* the first decided of these, involved, as in the case at bar, the State of Indiana's suit against a corporate president to recover unpaid corporate sales and use taxes. F. Harold Van Orman, the President of Van Orman Enterprises, Inc., complained that no notice of the department's intent to hold him personally liable for Van Orman Enterprises' unpaid taxes was given within the three-year corporate tax period of limitation, and, for that reason, the state should have been barred from collecting the tax debt. The court, disagreeing with Mr. Van Orman, reasoned,

> [I]t would not be unreasonable to conclude [that] Van Orman, as president and general manager of Van Orman Enterprises, Inc., was obviously aware that the corporation had failed to pay the sales and use tax during the period in question. He not only signed the protest to the State's assessment, but he participated in the hearing on the assessment. To say that Van Orman was unaware of the corporation's failure to pay the tax or to contend that he was unaware of his personal liability, in the face of [the statute outlining conditions for personal liability of corporate officers], is ludicrous. All persons are charged with the knowledge of the rights and remedies prescribed by statute. . . . The clear pronouncement of the statute is, ipso facto, sufficient notice that a duty exists to remit the tax fund held in trust. No personal notice of the assessment is required. [*Id.* at 1306. Citations omitted.]

Although devoid of a statute of limitations discussion, the per curiam decision in *Keith v Dep't of Treasury, supra,* nonetheless provided the lower courts in this case with much of the substantive reasoning on which their decisions were based. The facts in *Keith* similarly involved the personal liability of corporate officers for unpaid corporate use taxes. The issue there, however, was whether proper notice of the corporate officer's liability for payment of the corporate sales tax was given pursuant to MCL 205.24(1); MSA 7.657(24)(1).[25] Holding that notice to the corporate officer was not necessary, the Court opined:

> Statutory notice provisions are designed to provide due process of law, the purpose being to provide the taxpayer with notice that a deficiency assessment has been levied for certain taxes and to afford the taxpayer an opportunity to contest it. A defect in formal notice does not violate due process if notice was in fact given. . . . The due process test concerning notice is whether the means chosen to serve notice are reasonably calculated to reach the party, and not whether notice is actually received. [*Id.* at 109. Citations omitted.]

Despite semantic distinctions between the statute considered at bar and the Indiana sales and withholding tax statute analyzed in *Ball v Indiana Dep't of Revenue, supra,* the lower courts in this case found its reasoning persuasive. In *Ball,* which, likewise, dealt with whether notice of a tax deficiency sent and received by a corporation provided

---

[25] MCL 205.24(1); MSA 7.657(24)(1) provides:

If a person fails or refuses to file a return or pay a tax administered under this act within the time specified, the department, as soon as possible, shall assess the tax against the person and notify the person of the amount of the tax.

sufficient notice to the responsible officer, the Indiana Tax Court held:

> When notice to the corporation is notice to the officer, the officer is apprised of the amount assessed against the corporation. Because [the corporate officer's] personal liability for the tax is purely derivative, he is also effectively apprised of his potential personal liability for the amount assessed against the corporation. Notice to the corporation is therefore reasonably calculated to apprise the responsible officer of his personal liability for corporate tax.
>
> * * *
>
> Since the responsible officer's personal liability for the tax is purely derivative, the application of a separate statute of limitations to the responsible officer's assessment makes no sense.[26] [*Id.* at 358-359. See also *Rowland v Collins, supra.*]

---

[26] In its brief, the Department of Treasury sought to analogize derivative corporate tax liability to that of lender or surety corporate tax liability, as discussed in *United States v Associates Commercial Corp,* 721 F2d 1094 (CA 7, 1983). In *Associates,* the court held that the same limitation period applicable to principally taxed corporate employers should also be applicable to its lenders. The court further held that under 26 USC 6303(a),* a lender was a "person liable for the unpaid tax," so that separate notice of liability was required to be sent to a lender within the principal taxpayer limitation period.

We decline to apply the reasoning found in *Associates* to the present facts for several reasons. First, the court in *Associates* principally addressed the tax ramifications arising out of an individual's choice to *lend* funds to a corporation, a situation clearly distinguishable from the case at bar. Second, our decision today narrowly speaks with regard to derivative corporate officer liability as outlined in MCL 205.96(3); MSA 7.555(6)(3), and does not purport to supply any guidance as to corporate lenders or sureties. Third, and most important, the opinion espoused in *Associates* was repudiated by the United States Supreme Court in *United States v Jersey Shore State Bank,* 479 US 442; 107 S Ct 782; 93 L Ed 2d 800 (1987), where the Supreme Court held that the language found in 26 USC 6303(a), to the effect that "notice of [an assessment] to each person liable for the unpaid tax," did not require the government to provide notice and a demand for payment to a lender before bringing suit to collect sums for which the lender was liable.

---

* Section 6303. Notice and demand for tax.

E

We reject the appellant's assertion that derivatively liable officers should receive individual notice of the Treasury's intention to seek personal collection. We believe that a corporate officer who is liable under MCL 205.96(3); MSA 7.555(6)(3) must have necessarily been intimately involved in the corporation's failure to pay taxes and consequently does not need formal notice of such liability to be able to defend in a subsequent action. See *United States v Hunter Engineers & Constructors, Inc,* 789 F2d 1436 (CA 9, 1986). The service of notice to derivatively liable corporate officers would simply add an additional formalistic requirement upon which parties liable under MCL 205.96(3); MSA 7.555(6)(3) could rely for the purpose of thwarting the Legislature's intent to recover the unpaid use taxes from such person. We believe a conclusion by this Court that the appellant, Mr. Livingstone, who, on his own admission, consciously failed to pay the taxes owed by a corporation he individually owned, and whose activities he personally oversaw, is not now responsible to remit the same, in its entirety, would be absurd.

Officers who are made personally aware of corporate tax deficiencies and who, through neglect or intent, fail to make provisions for the satisfaction

(a) General rule.—Where it is not otherwise provided by this title, the Secretary shall, as soon as practicable, and within 60 days, after the making of an assessment of a tax pursuant to section 6203, give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof. Such notice shall be left at the dwelling or usual place of business of such person, or shall be sent by mail to such person's last known address.

of the corporate tax debt when due, simply cannot be allowed to take advantage of their own omissions.[27] To say that the appellant was unaware of his imminent personal liability in the face of MCL 205.96(3); MSA 7.555(6)(3), would be unrealistic. The clear pronouncement of the statute is, we agree, ipso facto sufficient notice that a duty exists to ultimately remit the tax liability to the state. See *Van Orman,* 416 NE2d 1306.[28]

CONCLUSION

In light of the foregoing, we conclude that the use tax statute of limitation found in MCL 205.100(3); MSA 7.555(10)(3), has no application to derivatively liable corporate officers. Consequently, the statute of limitation here should not bar a majority of the use tax imposed upon the appellant. We further would hold that the Department of Treasury is not required to provide individual notice of personal liability to derivatively liable officers. Accordingly, the decision of the Court of Appeals should be affirmed.

CAVANAGH, J., concurred with ARCHER, J.

RILEY, C.J. (*concurring*). Because the instant

---

[27] In cases where a corporate tax default occurs *before* the officer assumes control over the respective tax activities of a corporation, the officer cannot be held personally liable for the corporation's tax debts, because he was not "charged with the responsibility for making the corporation's returns and payments" of the corporate taxes at the time the default occurred. See *Slodov v United States,* 436 US 238; 98 S Ct 1778; 56 L Ed 2d 251 (1978).

[28] In view of the most recent amendment of MCL 205.100(3); MSA 7.555(10)(3), see n 2, the question whether there is a need for a statute of limitation directed specifically at derivatively liable corporate officers under MCL 205.96(3); MSA 7.555(6)(3), so that the length of time in which an officer may be held liable for payment of corporate use taxes can be limited or "cut short," is one that is appropriately addressed to the Legislature.

case will have a limited value in light of the amendment to the section in controversy, I concur in the result reached by Justice ARCHER for the reasons expressed in the opinion of the Court of Appeals.

BOYLE, J., concurred with RILEY, C.J.

LEVIN, J. (*dissenting*). The question presented is whether a four-year statute of limitation, which all agree applies to an assessment of use tax against a corporation, also applies to an assessment against an officer of the corporation who is subject, as a "responsible officer," to personal liability for the corporation's failure to pay use tax.

I would hold that the statute of limitation applies to an assessment against a responsible officer and would reverse the decision of the Court of Appeals.

I

Livingstone was the sole owner, treasurer, and chairman of the board of directors of the St. Clair Rubber Company, a corporation subject to the Use Tax Act.[1] The department issued a notice of intent to assess St. Clair on December 10, 1981, for use taxes for the four years, July 1, 1978, through June 30, 1981. St. Clair filed a timely appeal. The revenue commissioner found that there was a deficiency for the period in question. St. Clair did not appeal this decision. On September 29, 1982, the department issued a final assessment against St. Clair.

St. Clair did not pay the taxes and interest. The department, on July 27, 1984, issued assessments against Livingstone and Gordon Wood, as responsi-

[1] MCL 205.91 et seq.; MSA 7.555(1) et seq.

ble officers, pursuant to § 6(3) of the Use Tax Act.[2] Livingstone and Wood appealed the assessments to the Tax Tribunal. The Tax Tribunal, concluding that Wood was not, and that Livingstone was, a responsible officer, reversed the assessment against Wood, and affirmed the assessment against Livingstone. Livingstone appealed in the Court of Appeals, arguing that the assessment against him was, as to three of the years involved, barred by the four-year statute of limitation.[3] The Court of Appeals affirmed the Tax Tribunal's decision.[4]

I would hold:

—the statute of limitation applies not only to an assessment against a corporation, but also to an assessment against a responsible officer,

—the statute begins to run, for an assessment against a responsible officer as well as for an assessment against a corporation, respecting unpaid use tax liability accruing in a particular month, on the fifteenth day of the following month when the corporation fails to file the required return or pay the tax, and

—the running of the statute is not tolled as to an assessment against a responsible officer until the Department of Treasury either notifies him of the intent to assess him or assesses him.[5]

Because notice of assessment against Livingstone was not sent until July 27, 1984, the four-year statute of limitation had theretofore run for three of the four years involved, i.e., it had run for the three-year period that ended June 30, 1980.

---

[2] MCL 205.96(3); MSA 7.555(6)(3). For text of § 6(3), see n 7.

[3] Livingstone does not contest his liability as a responsible officer for the one-year period July 1, 1980, through June 30, 1981.

[4] *Livingstone v Dep't of Treasury*, 169 Mich App 209; 426 NW2d 184 (1989).

[5] MCL 205.21(2); MSA 7.657(1)(2), MCL 205.100(4); MSA 7.555(10)(4) quoted in n 34.

## II

Use tax returns are required to be filed and the tax paid by the corporation, under § 6(1) of the Use Tax Act, on the fifteenth day of each month[6] with respect to the tax payable for the previous month.

The Use Tax Act provides, in § 6(3), that an officer having control or supervision of, or responsibility for, making the corporation's use tax returns and payments, shall be personally liable for the failure of the corporation to file the required return or pay the tax.[7] Section 6(3) further directs that the sum due for the liability may be "*assessed*

---

[6] Section 6(1) of the Use Tax Act provides:

> Every person storing, using, or consuming tangible personal property or services, the storage, use, or consumption of which is subject to the tax imposed by the act, when the tax was not paid to a seller, and every seller collecting the tax from the purchaser, shall, unless otherwise prescribed by the department under the provisions of subsection (2), on or before the fifteenth day of each calendar month file with the department a return for the preceding calendar month in such form as may be prescribed by the department, showing the price of each purchase of tangible personal property or services during the preceding month, and such other information as the department may deem necessary for the proper administration of this act. At the same time each person shall pay to the department the amount of tax imposed by this act with respect to the purchases covered by such return. A return shall be signed by the person liable for the tax, or his duly authorized agent if the return is prepared by any person other than the taxpayer, the return shall also be signed by the person and show his address. [MCL 205.96(1); MSA 7.555(6)(1).]

[7] Section 6(3) of the Use Tax Act provides:

> If a corporation licensed under this act fails for any reason to file the required returns or to pay the tax due, any of its officers having control, or supervision of, or charged with the responsibility for making the returns and payments shall be personally liable for the failure. The dissolution of a corporation shall not discharge an officer's liability for a prior failure of the corporation to make a return or remit the tax due. The sum due for such a liability may be assessed and collected as provided in section 17. [MCL 205.96(3); MSA 7.555(6)(3).]

and collected as provided in § 17."[8] (Emphasis added.)

Section 10(3) of the Use Tax Act provided that "[a] deficiency, interest, or penalty shall not be *assessed* after the expiration of 4 years from the date set for the filing of the required return . . . ."[9] (Emphasis added.) Section 10(3) did not differentiate between an assessment against a corporation and an assessment under § 6(3) against a responsible officer. Reading § 6(3) and § 10(3) together, it is clear that corporate officers and corporations alike may not be assessed after the expiration of four years from *the date on which the corporation failed timely to pay the tax and file the required return.*

III

The Department of Treasury appears to acknowledge that the four-year statute of limitation begins to run, as to assessments for a particular month *against a corporation,* on the fifteenth day of the following month.

---

[8] See n 7 for the full text of § 6(3). The reference in § 6(3) to § 17 is a misnomer and should be read as a reference to § 10. See appendix, separate opinion, *post,* p 829.

[9] Section 10(3) of the Use Tax Act provided:

A deficiency, interest, or penalty shall not be assessed after the expiration of 4 years from the date set for the filing of the required return or the date the return was filed, whichever is later. [MCL 205.100(3); MSA 7.555(10)(3).]

The statute of limitation, contained in § 10(3), was repealed by a 1988 amendment of this section. 1988 PA 376, § 1. In 1986, however, two years before the repeal of the limitation period in the Use Tax Act, the Legislature added § 27(a), by enacting 1986 PA 58, § 1; MCL 205.27a; MSA 7.657(27a), to the general revenue provisions. Section 27a(2) includes a statute of limitation applicable to all taxes administered by the revenue division and effectively identical to the statute of limitation contained in § 10(3). See separate opinion, *post,* pp 818-819, and appendix, *post,* p 832.

The department, in an extraordinary abdication of expressly granted power,[10] asserts that it may not assess a responsible officer until it first assesses the corporation and such an assessment becomes final when the corporation fails to exercise or has exhausted its rights of administrative and judicial appeal.[11] The department contends that the responsible officer cannot, therefore, be assessed, and notice of assessment cannot be sent to the responsible officer, until after an assessment against the corporation becomes so final.

The Court of Appeals agreed with the department's analysis of the statute. It said that, since corporate officer liability does not arise until "after" the corporation fails to pay the tax due, the corporation is "primarily liable, the corporate officer's liability is secondary" and "derivative."[12]

The Court of Appeals said that "the failure," referred to in the statute,[13] for which a responsible corporate officer is liable is the failure of the corporation—years after the tax became due on the fifteenth of the month following the month for which it was payable—to pay an *assessment* by the department against the corporation[14] that ulti-

[10] See n 19 and accompanying text.

[11] The department contends that "an assessment [against the corporation] was a condition precedent to establishing that the tax was 'due' within the meaning of" § 6(3) of the act providing for assessments against a responsible officer.

[12] *Livingstone v Dep't of Treasury,* n 4 *supra,* pp 213-214.

[13] See n 7.

[14] When issuing the initial assessment respondent does not have the election to first assess the corporate officer. Under § 6(3), the corporate officer is assessed *if a corporation fails to file the required returns or to pay the tax due.* If respondent were to assess the corporate officer first, the officer could properly defend on grounds that the liability was incurred by the corporation. The officer's liability arises *after* the corporation fails to pay the tax due. It is the corporation which is primarily liable, the corporate officer's liability is secondary. Thus, petitioner's liability for the unpaid corporate tax is not, as claimed by petitioner, separate and distinct from the assess-

mately becomes final after exercise or failure to exercise appellate rights.[15]

The concurring opinion agrees with the result reached by the lead opinion for the reasons expressed in the opinion of the Court of Appeals.

IV

Section 6(3) of the Use Tax Act provides that a responsible corporate officer "shall be personally liable for *the failure.*"[16] (Emphasis added.) The "failure" for which the responsible officer is personally liable is not, however, a failure of the corporation to pay an *assessment.* The "failure," as explicitly stated in the statute, is the failure of

ment against the corporation. [Emphasis in original. *Livingstone v Dep't of Treasury*, n 4 *supra*, pp 213-214.]

[15] The Court concluded that a corporate officer cannot be assessed contemporaneously with the corporation because the officer does not become liable until the corporation fails to pay the assessment.

Further, since corporate officer liability is derivative, the Court of Appeals concluded that once an assessment becomes final against a corporation, an officer cannot collaterally attack the amount of the assessment by asserting a separate and distinct statute of limitations as a defense. The Court of Appeals reasoned:

> Having decided that the responsible corporate officer's liability is not separate and distinct from that of the corporation, it necessarily follows that the corporate officer may not raise a separate and distinct period of limitations as a defense. To hold otherwise would convert that which is derivative into that which is nonderivative. [*Livingstone v Dep't of Treasury*, n 4 *supra*, p 214.]

Although the Court did not expressly decide that the four-year statute of limitation does not apply to the assessment of a responsible corporate officer, the effect of its holding—that officer liability does not arise until the assessment has become final against the corporation and that once the assessment becomes final against the corporation, an officer may not raise the statute of limitation as a defense—is exactly that.

Finally, the Court of Appeals concluded that responsible corporate officers are not entitled to notice of assessment because such officers can be assumed to have knowledge of the assessment and liability.

[16] See n 7.

the corporation "to *file* the required returns or to *pay* the tax due . . . ."[17] The return is required to be filed and the tax paid[18] on the fifteenth day following the month in which the tax liability arises.

When a corporation fails on the fifteenth day of the month following either to file the required return or to pay the tax, the responsible officer *then* becomes, on *that* fifteenth day, "personally liable for the failure" of the corporation, and the four-year statute of limitation begins to run as to an assessment against the corporation and also as to an assessment against a responsible officer.

This reading, a simple, uncomplicated, literal reading of the statute, is not impugned by the characterizations of corporate officer liability pressed by the Court of Appeals and adopted by the majority. One can agree that an officer's liability·arises "after" the corporation fails to pay the tax, that a corporation is "primarily liable," that a responsible officer's liability is "secondary" and "derivative," without agreeing with the conclusion that corporate officer liability arises only after the corporation has failed to pay an *assessment* rather than when the corporation failed timely to *file* the return and *pay* the tax without assessment by the department.

The statute does *not* require assessment of the corporation as a precondition to liability of the corporation or of the responsible officer. Nor does the statute require that the department assess the corporation or seek to collect from the corporation before proceeding against the officer. The liability of the officer arises, without regard to assessment of the corporation, when the corporation fails timely to file the return or pay the tax due.

---

[17] Section 6(3). (Emphasis added.) For text of § 6(3), see n 7.

[18] *Without assessment* by the department against the corporation.

The department, as a matter of convenience or courtesy, may seek first to collect from the corporation, the primary obligor, but it is not obliged to do so. It may proceed against the principal (the corporation) or the surety (the responsible officer) or both at the same time. This Court should not be swayed by the department's lament that it is administratively inconvenient to administer the law as it is written.[19]

The law of suretyship provides an apt analogy. As a corporate officer who became liable for the corporation's failure to pay taxes, Livingstone was in essence, *as the Attorney General argued in this Court,* a surety for St. Clair. The liability of a surety, as a general rule accrues at the same time as that of the principal.[20]

Because a surety's liability accrues at the same time as the principal's it is not necessary that a creditor proceed against the principal before proceeding against the surety:

> The remedies are not inconsistent, but are merely cumulative; both may be pursued at the same time until the plaintiff's damages are satisfied. *Stated differently, a creditor's right to proceed against the surety exists independently of his right to proceed against the principal.*[21] [Emphasis added.]

---

[19] The statute of limitation was reduced from six to four years in 1980, and no longer speaks of a year ending June 30. The assessment against the corporation and Livingstone was nevertheless for a year ending June 30.

It appears that the department prefers to ignore changes in the statute and to administer it as if June 30 was still a cutoff date, and the department still has six years to assess.

[20] 74 Am Jur 2d, Suretyship, § 141, p 101. See *Avery v Miller,* 81 Mich 85, 88; 45 NW 503 (1890), holding that the liability of an administratrix's surety arose on "the date when she [the administratrix] failed to comply with the order of the court fixing that day as the limit within which she should pay the debts."

[21] 74 Am Jur 2d, n 20 *supra,* § 135, p 96.

The same treatise also states:

> *Ordinarily, an obligee's cause of action against the surety accrues at the same time as does the cause of action against the principal obligor,* and it is not necessary for the principal's obligation to be settled or determined before the obligee can proceed against the surety.[22] [Emphasis added.]

The department need not have assessed St. Clair before assessing Livingstone.

v

The Court of Appeals endorses the department's view that the finality of the amount of the assessment against St. Clair would bar collateral attack by Livingstone on the amount of the assessment. (Livingstone does not challenge the amount of the assessment.)

Surely a responsible corporate officer could raise a defense of payment. The analysis of the Court of Appeals opens the door to ipse dixit decisions concerning which defenses may be raised and which may not.

The law of suretyship again serves as a guide. This Court recently reiterated the rule that a surety may raise defenses available to the principal:

> "*The surety is in such cases permitted to defend, however, by showing all matters that might have been asserted by the principal in the bond. Clearly, the surety is permitted to defend on any ground personal to himself which was not an issue, and could not be made an issue, in the action as it was waged.*" [*P R Post Corp v Mary-*

---

[22] *Id.,* § 141, p 101, n 73. See also *C & L Rural Electric Cooperative Corp v American Casualty Co,* 199 F Supp 220 (ED Ark, 1961).

*land Casualty Co,* 403 Mich 543, 548; 271 NW2d
521 (1978). Emphasis added.][23]

While a judgment against a principal may be
prima facie evidence in an action against a surety,
it is not conclusive. A surety is free to raise
defenses available to the principal. Similarly, Liv-
ingstone, as surety for St. Clair, is not bound by a
judicial or quasi-judicial determination against St.
Clair to which he was not a party.

VI

Federal cases interpreting a statute of limitation
in the Internal Revenue Code support a reading of
use tax § 10(3), the statute of limitation, that
includes responsible officers within its coverage.
The Internal Revenue Code provides in § 6672 a
procedure for assessing "responsible persons" who
fail to pay over employer withholding taxes[24] and a
statute of limitation on assessments.

Federal cases indicate that the statute of limita-
tion set forth in the federal act applies to actions
against officers. *Williams v United States,*[25] is illus-
trative. In August, 1976, Williams, an officer of a

[23] In *Nunnally v Int'l Fidelity Ins Co,* 94 Mich App 291; 288 NW2d
356 (1979), the Court held that, although the plaintiff had obtained a
consent judgment against the principal and the surety had knowledge
of the previous action against the principal, the statute of limitation
applied to bar the action against the surety.

[24] Any person required to collect, truthfully account for, and
pay over any tax imposed by this title who willfully fails to
collect such tax, or truthfully account for and pay over such
tax, or willfully attempts in any manner to evade or defeat any
such tax or the payment thereof, shall, in addition to other
penalties provided by law, be liable to a penalty equal to the
total amount of the tax evaded, or not collected, or not ac-
counted for and paid over. [26 USC 6672.]

[25] Unpublished memorandum opinion of the United States District
Court for the Northern District of Illinois, decided October 6, 1983
(Docket No. 82 C 3505).

company that failed to pay withholding tax during 1972 and the first quarter of 1973, was assessed the full amount of the unpaid taxes under § 6672. Williams moved for summary judgment on the basis that the statute of limitation[26] precluded assessment. The court said:

> Since the statute of limitations began running on April 15, 1973, plaintiff argues that the penalty assessment [pursuant to § 6672] on August 4, 1976, came outside the limitation period.
> *The Government agrees with the plaintiff's legal analysis,* but offers as evidence a waiver form apparently signed by Williams that extended the limitation period by one year. . . . The Government's response to the motion establishes the existence of the genuine issue of material fact that prevents summary judgment. [Emphasis added.]

In *Holcomb v United States,* 622 F2d 937, 939 (CA 7, 1980), as in *Williams,* the Internal Revenue Service maintained that the statute of limitation had not run with respect to a § 6672 action[27] against the responsible corporate officers because the officers had signed a waiver extending the limitation period. The United States Court of Appeals said that the jury had accepted the officers' claim that they were intentionally misled into signing the waivers. The government was *not* per-

---

[26] 26 USC 6501 provides:

> Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.

[27] See n 25.

mitted to recover from the officers with respect to the last two quarters of 1968, "those claims having been barred by the statute of limitations."

In *Calderone v United States,* 799 F2d 254 (CA 6, 1986),[28] the court[29] said that the personal liability of the responsible person under § 6672 is "separate and distinct from that imposed upon the employer" and that the *"Service need not have attempted to collect from the employer before assessing a responsible person"* under § 6672 (emphasis added).

The court in *Calderone* explained that the IRS policy statement[30] "contemplates that in some

---

[28] In *Calderone,* the corporation failed to pay social security taxes between February and July of 1975. In August, 1975, the corporation filed for bankruptcy. Calderone and another corporate officer were assessed under § 6672. While the parties' countermotions for summary judgment were pending, the officers sought a stay on the basis that they expected the tax deficiency to be satisfied by a distribution from the bankruptcy estate of the corporation. Following the expiration of a one-year stay, a hearing was held on the parties' countermotions for summary judgment. The district court, granting summary judgment to the corporate officers, said:

> IRS Policy Statement P-5-60 requires the government to seek collection of the taxes from the corporate assets of the employer before assessing responsible officers. [*Id.,* p 255.]

The Court of Appeals reversed.

[29] Quoting *Cooper v United States,* 539 F Supp 117, 121 (ED Va, 1982), which in turn quoted *Datlof v United States,* 370 F2d 655, 656 (CA 3, 1966).

[30] Policies of the IRS Handbook, P-5-60 (as approved June 2, 1977), provided:

> "If a corporation has willfully failed to collect or pay over employment taxes, . . . , the 100-percent penalty will be asserted against responsible officers and employees of the corporation only if such taxes cannot be collected from the corporation itself." [*Calderone, supra,* p 256.]

P-5-60 (as approved May 30, 1984) was revised to read:

> [T]he 100-percent penalty may be asserted against responsible officers and employees of the corporation, . . . , whenever

cases the IRS will seek payment from others *at the same time* it is seeking collection from the corporation." (Emphasis added.) *Id.,* p 258. *Calderone* controverts the department's contention, endorsed by the Court of Appeals and, by adoption, the majority, that the statute of limitation cannot apply to corporate officers because the department is barred from proceeding against a responsible officer until the corporation exhausts its appellate rights and then fails to pay an assessment that has so become final.

### VII

It is most unusual for there not to be a statute of limitation on assessment. Absent a statute of limitation, responsible officers are exposed to assessment indefinitely.

The Court of Appeals said that the result it reached would not expose Livingstone or other corporate officers to stale claims or deny them due process of law because notice of the assessment and tax liability may be expected to reach corporate officers. The Court reasoned that since a responsible corporate officer will be privy to such information, corporate officers are not entitled to separate notice of assessment.

The Court of Appeals confuses knowledge of indebtedness with the kind of notice required by statute to toll the running of a statute of limitation.[31]

---

such taxes cannot be immediately collected from the corporation itself. [*Id.,* p 258, n 3.]

[31] The Court of Appeals said:

Under the statute, only officers "having control, or supervision of, or charged with the responsibility" for filing the required tax returns are made derivatively liable. [*Livingstone, supra,* p 214.]

Although a responsible corporate officer, such as Livingstone, may have actual knowledge of the assessment of the corporation and his potential liability, that does not toll the running of a statute of limitation. Knowledge of a potential claim or action does not toll a statute of limitation. *Higginbotham v Fearer Leasing, Inc,* 32 Mich App 664, 676; 189 NW2d 125 (1971).[32] It is the commencement of proceedings and not knowledge of potential liability that tolls the statute.[33] Arguments of

The Court reasoned that since only officers with this degree of responsibility and involvement are liable, these officers will be apprised of the tax liability and the assessment. The Court concluded that because such officers will have this information, there is no need for a statute of limitation to protect against stale claims and guarantee due process of law.

[32] See also *Mason v Letts,* 14 Mich App 330, 332; 165 NW2d 481 (1968), declaring that although the defendants had knowledge of the plaintiff's intention to bring an action, that did not toll the running of the statute of limitations.

[33] GCR 1963, 101 means that an action is commenced by the filing of a complaint. It has that meaning in the context of the statutes of limitations, as well as every other context. [*Buscaino v Rhodes,* 385 Mich 474, 481; 189 NW2d 202 (1971).]

It is now provided by statute and court rule that a civil action is commenced by filing a complaint with the court. The statutes and court rules, in defining the commencement of an action, provide for no act other than the filing of a complaint with the court, as having that effect, although it is provided that the summons will be issued by the clerk upon the filing of the complaint. [1A Callaghan's Michigan Pleading & Practice, § 16.04, p 237.]

The commencement of an action to enforce a right before the statute of limitations has run against it suspends the running of the statute as to that particular action . . . . [20 Michigan Law & Practice, Statute of Limitations, § 54, p 610.]

The timely commencement of an action to enforce a right before the statute of limitations has run ordinarily suspends the running of the statute with regard to that particular action. [51 Am Jur 2d, Limitation of Actions, § 200, p 766.]

Ordinarily a mere demand or assertion of a claim is not the equivalent of a suit. Thus, the mere assertion of a claim without any accompanying act to give effect to it cannot avail

lack of prejudice have no place in the exacting domain of limitations of actions. It is the inception of the judicial process contemplated by the statute rather than the happenstance of actual knowledge that suspends the running of a statute of limitation.

Although notice to St. Clair may have been *constitutionally* adequate, it was *statutorily* inadequate. While the department issued notice of intent to assess the corporation, it did not issue a notice of intent to assess Livingstone.[34] Livingstone did not receive notice until the department issued the assessment on July 27, 1984.

Under the statutory scheme, Livingstone was subject to assessment. As such, he was entitled, no less so than the corporation, to the statutorily prescribed procedural protections of the assessment process, including notice of intent to assess. Notice of intent to assess the corporation was not notice to Livingstone for the purpose of the statutorily required notices nor for the purpose of tolling the statute of limitation.

I would reverse the Court of Appeals.

BRICKLEY and GRIFFIN, JJ., concurred with LEVIN, J.

LEVIN, J. (*separate opinion*). The lead opinion, in

to keep alive a right which otherwise would be precluded by a limitation statute. [*Id.*, § 207, p 770.]

[34] See separate opinion, *post,* pp 821-822, n 18, for text of § 21(2) providing for notice of intent to assess or levy tax. Section 10(4) provided in part:

The running of the statute of limitations shall be suspended for:

(a) The period pending a final determination of the tax after issuance of a notice of intent. [MCL 205.100(4); MSA 7.555(10)(4).]

affirming the decision of the Court of Appeals, advances many of the same arguments pressed by the Court of Appeals. The opinion, however, also makes arguments not urged by that Court. In this separate opinion, I address those arguments.

I

The lead opinion goes further than the Court of Appeals and expressly declares that the four-year statute of limitation "has *no application* to derivatively liable corporate officers," and that the Department of Treasury "is *not required to send individual notice of personal liability* to derivatively liable officers."[1] (Emphasis added.)

A

The opinion recites the generalization that "statutes of limitation sought to be applied to bar rights of the government must receive a strict construction in favor of the government."[2] A statute, however, should not be construed so as to confound the common-sense meaning of words[3] or to defeat the cohesion and internal logic of the statutory scheme. Rules of strict or liberal

---

[1] *Ante,* p 776.

[2] *Id.,* pp 785-786.

[3] The opinion argues that Livingstone is not a " 'taxpayer' " (*ante,* p 788) or a "tax actor[ ]" (*id.,* p 794) or a "person" as the term is used in MCL 205.100; MSA 7.555(10) (*id.,* p 793) and that Livingstone was not " 'assessed' " (*id.,* p 789, n 18, and p 794).

> In the interpretation of tax measures the rule that words are to be given their common and ordinary meaning is important. [3A Sands, Sutherland Statutory Construction (4th ed), § 66.03, p 302.]

interpretation have no application where the statute is clear.[4]

## B

Section 6(3), stating that responsible officers may be personally liable, provides that the sum due for such liability may be *assessed* and *collected* as provided in § 17. In the appendix, I explain that the reference to § 17 is a misnomer. The Legislature manifestly intended to refer to § 10 of the Use Tax Act which contained provisions concerning assessment and collection, and which set forth the four-year statute of limitation.[5]

The author of the opinion dismisses the efforts in this opinion to discern the legislative intent respecting the reference to § 17, explaining that only the Legislature may resolve such matters.[6] The Legislature has done precisely what the opinion suggests. In enacting § 27a of the general revenue provisions,[7] the Legislature made explicit its intent that the statute of limitation applies to

[4] 2A Sands, *supra,* § 58.05, p 722.

[5] Section 10(3) of the Use Tax Act was in effect when the assessment against Livingstone was made. Nonetheless, it may be noted that the statute of limitation contained in § 10(3) was repealed in a 1988 amendment. 1988 PA 376, § 1. In 1986, however, two years before the repeal of the limitation period in the Use Tax Act, the Legislature added § 27a by enacting 1986 PA 58, § 1, MCL 205.27a(2); MSA 7.657(27a)(2) as part of the general revenue provisions. See text, *infra.*

[6] *Ante,* p 790, n 19.

[7] The import of the general revenue provisions, including those enacted in the 1986 amendments (see text below), for purposes of administration of the specific taxing statutes is set forth in § 20:

Unless otherwise provided by specific authority in a taxing statute administered by the department, *all taxes* shall be subject to the procedures of administration, audit, assessment, interest, penalty, and appeal provided in sections 21 to 30. [MCL 205.20; MSA 7.657(20). Emphasis added.]

the assessment of officers as well as to an assessment of the corporation.

In 1986, two years before the repeal of the statute of limitation set forth in § 10(3), the Legislature enacted § 27a as part of the general revenue provisions. This section contains both a statute of limitation identical in relevant wording and substance to that contained in Use Tax Act § 10(3)[8] *and* a provision making responsible officers liable for failure to file the return or pay the tax due, also identical in relevant wording and substance to that contained in Use Tax Act § 6(3).[9] Thus the

---

[8] Section 27a(2) provides:

A deficiency, interest, or penalty shall not be assessed after the expiration of 4 years after the date set for the filing of the required return or after the date the return was filed, whichever is later. The taxpayer shall not claim a refund of any amount paid to the department after the expiration of 4 years after the date set for the filing of the original return. A person who has failed to file a return is liable for all taxes due for the entire period for which the person would be subject to the taxes. If a person subject to tax fraudulently conceals any liability for the tax or a part of the tax, or fails to notify the department of any alteration in or modification of federal tax liability, the department, within 2 years after discovery of the fraud or the failure to notify, shall proceed to assess the tax with penalties and interest as provided by this act, computed from the date on which the tax liability originally accrued. The tax, penalties, and interest shall become due and payable after notice and hearing as provided by this act.

[9] Section 27a(5) provides:

If a corporation liable for taxes administered under this act fails for any reason to file the required returns or to pay the tax due, any of its officers having control, or supervision of, or charged with the responsibility for making the returns or payments shall be personally liable for the failure. The signature of any corporate officers on returns or negotiable instruments submitted in payment of taxes shall be prima facie evidence of their responsibility for making the returns and payments. The dissolution of a corporation shall not discharge an officer's liability for a prior failure of the corporation to make a return or remit the tax due. The sum due for a liability may be assessed and collected under the related sections of this act.

statute of limitation and the provision making officers liable are now both contained in one section of the general revenue provisions.[10]

Section 27a(5), the section of the general revenue provisions mirroring Use Tax Act § 6(3), in providing that responsible officers shall be personally liable, states that "[t]he sum due for a liability may be assessed and collected under *the related sections of this act.*" (Emphasis added.) By deleting the erroneous reference in § 6(3) of the Use Tax Act to § 17 and replacing it with the emphasized language, the Legislature made clear that the sum due for officer liability is to be assessed and collected under related sections of the act, including the limitation period.

C

The lead opinion, however, remains steadfast in its position that the limitation period has no application to officers because officer liability is "derivative."[11] The term "derivative" is not found in the statute.

The opinion nevertheless argues that the dissent

---

[10] The consolidation under the 1986 amendment of these provisions in one section applicable to all taxes reinforces the view here expressed that the Legislature did not intend, even before 1986, to differentiate between the procedures applicable to the assessment of corporations and those applicable to the assessment of corporate officers. A legislative amendment of a statute may shed light on the proper interpretation of the statute as previously enacted. *Detroit Edison Co v Dep't of Revenue,* 320 Mich 506, 509; 31 NW2d 809 (1948).

[11] The opinion asserts that three reasons support its conclusion that Livingstone's liability is derivative: First, the primary reason why persons incorporate is to "avail themselves of limited liability." *Ante,* p 782. Second, the corporate-officer liability arises from the acts of the corporation (the storage, use, or consumption of tangible personal property or services—see MCL 205.91 *et seq.*; MSA 7.555[1] *et seq.*), rather than from the acts of the officers. *Ante,* p 782. Third, a corporate officer's liability under § 6(3) arises only after the corporation has failed to pay the taxes due. *Ante,* pp 782-783.

does not accord the label "derivative liability" sufficient weight:

> The dissent wishes to render the term "derivative liability" a nullity when it asserts that a corporate officer's liability may be labeled "derivative" but that the officer is to be "assessed" a "separate and distinct" indebtedness. To the contrary, we believe application of the term "derivative liability" to corporate officers under MCL 205.96(3); MSA 7.555(6)(3), directs that *every* facet of an officer's resultant financial responsibility, including being "assessed," derives not from the officer's acts, but from the corporation's taxable business functioning.[12] [Emphasis in original.]

Because responsible officers are merely "derivatively liable," they cannot, according to the opinion, "occupy the same taxpayer status"[13] as the primary taxpayer and are not entitled to statutory protections, including the statute of limitation.

### D

The unstated premise, with which I disagree, is that a person whose liability is derivative is not a "taxpayer" and is not "assessed" and, therefore, is not entitled to statutorily prescribed process.

The lead opinion finds "significant" that sentences surrounding the sentence containing the limitation period refer to " '*the* taxpayer' " and " 'the *person* subject to tax under the act.' "[14] Reading these terms into the statute of limitation, the opinion reasons that since the statute applies only to taxpayers, and Livingstone, it assumes, is not a taxpayer, the statute cannot apply to Livingstone.

---

12 *Ante,* p 790, n 18.

13 *Ante,* p 788.

14 *Id.,* p 787.

The opinion's syllogism rests on the false premise that Livingstone is not a "taxpayer" within the meaning of the procedures prescribed for assessment and collection of unpaid tax. Livingstone sought review before the Tax Tribunal and litigated against the department the validity of the assessment against him under the Use Tax Act pursuant to a procedure applicable to a "taxpayer."[15] It is pursuant to general revenue provisions applicable to taxpayers that Livingstone now stands before this Court.[16]

The statutorily prescribed procedure for assessment and collection is based on the premise that a responsible officer is at least deemed to be a "taxpayer" for the purpose of that procedure. Section 21(2) *et seq.*, which replaces § 17,[17] provides for notice to the *taxpayer* of intent to assess or levy, provides the *taxpayer* a right to request a conference, and provides that a *taxpayer* has a right to appeal.[18]

---

[15] See *Allan v United States*, 386 F Supp 499, 504 (ND Tex, 1975), aff'd 514 F2d 1070 (CA 5, 1975), holding that a corporate officer is a "taxpayer" under the analogous federal scheme:

> On another tack, Mr. Allan [the corporate officer suing for refund] says that the notice was deficient because he is not the taxpayer at all; rather the corporation is the taxpayer. . . . Such a position not only seems to me at variance with the language of [26 USC] 6672, but also makes me question why Mr. Allan is the plaintiff in this suit, if he is not the taxpayer. It was his money that he paid to IRS and that entitled him to file this refund suit under 28 USC 1346(a)(1). *I believe that in a § 6672 setting, the taxpayer is not the corporation but instead is the responsible person from whom the tax (or "penalty") is attempted to be collected.* [Emphasis added.]

[16] See n 23.

[17] See appendix.

[18] In carrying out this section, the department, after determining the amount of tax due from a taxpayer, shall give *notice* to the taxpayer of its intent to levy the tax. The notice shall include a statement advising the taxpayer of a right to an informal conference. If the taxpayer serves written notice upon

Section 22[19] provides that an appeal to the
Court of Appeals may be taken by the *tax-payer,* and further appeal may be taken by the
*taxpayer* to the Supreme Court. Section 23[20] pro-

> the department within 20 days after receipt of the notice to the
> taxpayer and remits the uncontested portion of the liability,
> the taxpayer may request an informal conference on the ques-
> tion of liability for the assessment. Upon receipt of the written
> notice, the department shall set a time and place for the
> conference and shall give the taxpayer reasonable notice not
> less than 20 days before the conference. The conference pro-
> vided for by this subsection shall not be subject to the adminis-
> trative procedures act of 1969, Act No. 306 of the Public Acts of
> 1969, as amended, being sections 24.201 to 24.328 of the Michi-
> gan Compiled Laws. The taxpayer may appear or be repre-
> sented before the department and present testimony and argu-
> ment. After the conference, the commissioner shall render a
> decision and order in writing, setting forth the reasons and
> authority, and levy any tax, interest, and penalty found to be
> due and payable. The assessments shall be final and subject to
> appeal as provided in section 22. The final notice of assessment
> shall include a statement advising the taxpayer of a right to
> appeal. [MCL 205.21(2); MSA 7.657(21)(2).]

[19] A person aggrieved by an assessment, decision, or order of
the department may appeal the contested portion of an assess-
ment, decision, or order to the tax tribunal within 30 days, or
to the court of claims within 90 days after the assessment,
decision, or order. The uncontested portion of an assessment,
order, or decision must be paid as a prerequisite to appeal. . . .
The appeal shall be perfected as provided under Act No. 186 of
the Public Acts of 1973, as amended, being sections 205.701 to
205.779 of the Michigan Compiled Laws, and rules established
under that act for the tax tribunal, or chapter 64 of Act No.
236 of the Public Acts of 1961, as amended, being sections
600.6401 to 600.6475 of the Michigan Compiled Laws, and rules
adopted under that chapter for the court of claims. In an
appeal to the court of claims, the appellant shall first pay the
tax, including any applicable penalties and interest, under
protest and claim a refund as part of the appeal. An appeal by
right from a decision of the tax tribunal or the court of claims
may be taken by the taxpayer or the department to the court
of appeals. The appeal shall be taken on the record made
before the tax tribunal or the court of claims. Further appeal
to the supreme court may be taken by the taxpayer or the
department in accordance with the court rules provided for
appeals to the supreme court. [MCL 205.22(1); MSA 7.657(22)
(1).]

[20] (1) If the department believes, based upon either the exami-
nation of a tax return or an audit authorized by this act, that a

vides for notification of a *taxpayer* of the tax liability and interest on the sum due and penalties for negligence and fraud. Section 25[21] provides for demand on the *taxpayer*, and levy and sale on the *taxpayer's* property.

To declare that a responsible officer is not a "taxpayer" is to hold in effect that an assessment

---

taxpayer has not satisfied a tax liability or that a claim was excessive, the tax liability shall be determined by the department and the taxpayer shall be notified of that determination.

(2) If the amount paid is less than the amount which should have been paid or an excessive claim has been made, the deficiency, together with interest at the current monthly rate of 1 percentage point above the adjusted prime rate per annum from the time the tax was due, and until paid, shall become due and payable after notice and conference as provided in this act. A deficiency in an estimated payment as may be required by a tax statute administered under this act shall be treated in the same manner as a tax due and shall be subject to the same current monthly interest rate of 1 percentage point above the adjusted prime rate from the time the payment was due, until paid. . . .

(3) If any part of the deficiency or an excessive claim for credit is due to negligence, but without intent to defraud, a penalty of $10.00 or 10% of the total amount of the deficiency in the tax, whichever is greater, plus interest as provided in subsection (2), shall be added. Interest and penalty shall become due and payable after notice and conference as provided in this act.

(4) If any part of the deficiency or an excessive claim for credit is due to intentional disregard of the law or of the rules promulgated by the department, but without intent to defraud, a penalty of $25.00 or 25% of the total amount of the deficiency in the tax, whichever is greater, plus interest as provided in subsection (2), shall be added. Interest and penalty shall become due and payable after notice and conference as provided in this act. [MCL 205.23; MSA 7.657(23).]

[21] The commissioner, or an authorized representative of the commissioner, may cause a demand to be made on a taxpayer for the payment of a tax, unpaid account, or amount due the state or any of its departments, institutions, or agencies, subject to administration under this act. If the liability remains unpaid for 10 days after the demand and proceedings are not taken to review the liability, the commissioner or an authorized representative of the commissioner may issue a warrant under the official seal of that office. [MCL 205.25; MSA 7.657(25).]

against a responsible officer is not to be made pursuant to the foregoing procedures,[22] that a responsible officer has no right to stand before this Court on appeal from the assessment against him,[23] and that the department could not, under the revenue division act, demand, levy, and sell his property for nonpayment.

E

The lead opinion further reasons that since Livingstone is not a taxpayer, the proceeding against him cannot be considered an assessment.[24]

[22] The lead opinion remarks that St. Clair was accorded the benefits of all procedures applicable to "taxpayers," e.g., St. Clair was sent notice of intent to levy, it requested and received an informal conference, and it had a right of appeal from the department's final determination. *Ante,* p 789.

I do not question that St. Clair was a "taxpayer" within the meaning of the Use Tax Act. I contend, rather, that both the corporation and a responsible officer, who becomes personally liable for the full amount of the corporate tax, are taxpayers. It was in light of this that we note that the responsible officer in this case was accorded procedures applicable to "taxpayers" throughout the whole assessment and collection process.

[23] The lead opinion acknowledges that § 22 begins, "[a] *person* aggrieved by an assessment" may appeal to the tax tribunal or to the Court of Claims. Section 22, however, continues, "a *taxpayer*" may take an appeal *to the Court of Appeals* and that a *taxpayer* may take a further appeal *to the Supreme Court.* (Emphasis added.) See n 19 for full text. Accordingly, it is pursuant to a provision applicable to *taxpayers* that Livingstone stands *before this Court.*

The opinion concedes that the term "the taxpayer," as contained in § 22, must be read to include other " 'person[s] aggrieved,' " such as responsible officers. *Ante,* p 789, n 16. Otherwise, "person[s] aggrieved" would have appeals only to the Tax Tribunal or to the Court of Claims and not thereafter to the Court of Appeals and to this Court, and only the department could appeal to the Court of Appeals and to this Court.

The author of the lead opinion reads into the statute of limitation the term "the taxpayer" and defines that term as not including a responsible officer and, thus, to exclude a responsible officer from the operative effect of the statute of limitation. He recognizes nevertheless that such a narrow reading of "the taxpayer," as applied to the appeals provision, would mean that and corporations would have access to differing levels of appeal.

[24] Construing the statutes together, we conclude that the limita-

Section 6(3) imposing liability on responsible corporate officers is, according to the lead opinion, a mere collection mechanism—not requiring assessment—drafted to establish a means of monetary recourse against derivatively liable persons, and provides a means of collecting tax deficiencies "assessed" against corporate "tax actors." Thus the action against Livingstone, according to the opinion, was an "ancillary, ministerial step in the collection process" rather than an "assessment."[25]

Having thus exorcised "assessment," the opinion concludes that the four-year statute of limitation, applicable to an assessment, does not apply to an assessment against a responsible officer.

The opinion rejects the view that the department's use of the word "assessment" in its appellate brief and elsewhere to describe the notice of personal tax liability should be dispositive in this instance.[26] The term "assess," however, appears not only in the department's brief and in the notice sent to Livingstone, but also in the statu-

---

tion provision applies only to those "persons," hence, private corporations, see MCL 205.92(a); MSA 7.555(2)(a), who store, use, or consume tangible personal property or services. As we noted previously, the *corporate officer,* although "charged with the responsibility for making returns and payments" of corporate taxes, is nonetheless *not the taxable actor and cannot, therefore, be "assessed."* [*Ante,* pp 793-794. Emphasis added.]

[25] The transposition of a tax debt onto a *derivatively liable party,* irrespective of the terminology used, is an *ancillary, ministerial step in the collection process,* created, apparently in light of the Legislature's recognition of the need to insure the payment, collection or satisfaction of tax deficiencies "assessed" against corporate tax actors. Thus, commensurate with what we deem to be a reasonable interpretive analysis of legislative intent and purpose, we conclude that *operation of the use tax limitation period is restricted to the corporate entity "subject to the tax,"* which, in this case, is St. Clair Rubber Company. [*Ante,* p 794. Emphasis added.]

[26] *Ante,* p 794, n 22.

tory provision making corporate officers personally liable.

The department repeatedly termed the action against Livingstone an "assessment." The department sent Livingstone a notice styled, "Notice of Final *Assessment*," on which the Treasury had typed, "This *Assessment* is issued under Act 94, Sec 6(c) Public Acts of 1937 as amended, making officers liable for the tax." (Emphasis added.) The total column was titled, "Total this *Assessment*," and a note in the corner indicated that the document was an "Original *Assessment* Copy." (Emphasis added.) The notice also contained the following notations: "In reply refer to *assessment* number B783970A;" "*Assessment* issued July 27, 1984;" "As a general rule, the Department files liens on all taxes at the time payment on an *assessment* is due;" "This *assessment* is made pursuant to information available to the Department." (Emphasis added.)

The lead opinion attempts to avoid this pronounced evidence that the department regarded the proceeding against Livingstone to be an assessment by arguing that while a corporate officer, such as Livingstone, may be a "person aggrieved by an assessment," he is not "assessed."

The opinion ignores the use of the word "assess" in § 6(3). Section 6(3)—the basis of the responsible officer's liability—concludes, "The sum due for such a liability may be *assessed and collected* as provided in section 17." (Emphasis added.) The Legislature chose the word "assess" to describe the means by which the department proceeds against corporate officers to collect delinquent taxes.[27]

---

[27] The Legislature reënacted this language in § 27a(5). See n 9 for the text of this section.

F

Agreeing with the Court of Appeals, the opinion argues that responsible officers cannot be assessed contemporaneously with the corporation. The opinion explains that corporate officer liability is

> activated following the allotment of a full and fair opportunity for a corporation to file and pay taxes, either voluntarily, as per MCL 205.96(1); MSA 7.555(6)(1) or following MCL 205.21(1) and (2); MSA 7.657(21)(1) and (2), assessment and levy.[28]

Reasoning that responsible officers do not become liable until quite some time after the corporation has been assessed, the lead opinion concludes that they may not be assessed at the same time as the corporation.[29] The opinion does not (and could not) cite any statutory source for the proposition that the department must avail itself of the provisions discussed above before an officer may become liable and be assessed.

Rejecting the view expressed in this opinion that corporate officer liability is triggered on the fifteenth of each month when the corporation fails to pay taxes or file the required return for the previous month, the opinion states:

> We believe adoption of the literal reading urged by the dissent, i.e., the random, monthly activation of § 6(3) liability, so as to create responsibility for tax payment in the corporation one month, and in

---

[28] *Ante,* p 783, n 14.
[29] *Id.,* p 783, n 14.

the derivatively liable officer the next, etc., would mock the purpose of the provision itself.[30]

The view here expressed that a responsible officer becomes liable on the fifteenth of each month when the corporation fails either to file the required return or pay the tax is compatible with the legislative purpose of creating a derivative source for payment of unpaid taxes.[31] Triggering of officer liability on the fifteenth of each month in which the statutory duty has not been met, is more determinate than triggering that liability at some later point—perhaps years after the tax became due—when the corporation has exhausted its rights of administrative and judicial appeal.

II

Finally, the lead opinion, agreeing with the Court of Appeals, declares that responsible officers are not entitled to notice of the department's intent to seek to collect from them. The opinion accepts the assumption of the Court of Appeals that an officer who is subject to liability as a responsible officer is necessarily informed of his potential liability.

Like the Court of Appeals, the opinion focuses on the notice requirement exclusively through a due process lens. Livingstone, as a responsible officer subject to assessment, was *statutorily* entitled to notice pursuant to the procedures set forth in the general revenue provisions.

Requiring notice to responsible officers, will not, as the opinion fears, constitute a needless administrative burden on the department and impede the collection of unpaid taxes. The department may,

---

[30] *Id.*, p 783, n 14. The liability of the responsible officer arises at the conclusion of the fifteenth day of a month in which the corporation fails to pay the tax, not the "next" month.

[31] *Id.*, p 794.

by providing notice within the four-year limitation period, preserve its rights against responsible officers.

### III

The statutory scheme does not differentiate between the procedures applicable to the assessment of corporations and those applicable to the assessment of responsible officers.

To hold, as the lead opinion would, that the statute of limitation is inapplicable to the assessment of responsible officers, is to allow such officers to be subject to an indefinite threat of liability.[32]

### APPENDIX

Section 6(3), added by 1971 PA 161, in terms provides that the sum due the department for the personal liability of the officer "may be assessed and collected as provided in *section 17*." It is clear, however, that the draftsperson and the Legislature intended to refer to § 10 (MCL 205.100; MSA 7.555[10]) and not § 17.

### I

Section 17, now repealed, did not provide a

---

[32] The opinion suggests that indefinite liability is no longer a threat because in *Slodov v United States,* 436 US 238; 98 S Ct 1778; 56 L Ed 2d 251 (1978), the United States Supreme Court held that a corporate officer cannot be held liable for tax debts of a corporation when the default occurs before the officer assumes control of the corporation. See *ante,* p 800, n 27.

While *Slodov* eliminated the possibility that an innocent officer who assumes control of a corporation at a time when the corporation has no funds with which to satisfy the tax obligation will be held accountable for corporate tax debt incurred before his employment, it did nothing to cut short the period in which an officer who *was* in office at the time the debt was incurred may be held liable for that debt.

methodology for assessment and collection of tax. Section 17 provided that a person who failed to file a return or who filed a false or fraudulent return or statement with intent to defraud would be deemed guilty of a misdemeanor and prescribed a criminal penalty therefor. It was also provided that in some circumstances the person would be guilty of perjury, a felony.

Section 10, as originally enacted, 1937 PA 94, § 10, provided that the State Board of Tax Administration shall have the power to assess any person who neglects or refuses to make a return required by the act, and that the board shall give such person written notice of assessment. Section 10 was amended in 1949 to provide for the manner in which such notice shall be given, for the assessment of penalties and interest after notice and hearing, and that penalties and interest, where there was fraudulent intent, shall not be waived, and to provide a six-year statute of limitations. 1949 PA 273.

II

Section 10 of the 1949 act was amended by 1980 PA 165 to provide for the four-year statute of limitation (see n 5) and to provide that the tax imposed by the act would be administered by the revenue commissioner pursuant to §§ 1-19 (MCL 205.1-205.19; MSA 7.657[1]-7.657[19]) of the revenue division act.

Sections 11, 11a, 12, 13, *and 17* of the Use Tax Act were repealed by 1980 PA 165. Thus there was no § 17 when Livingstone was assessed in 1984.

Act 165 provided that it would not take effect unless legislation to which it was tie-barred, 1980 PA 162, was enacted into law. Act 162 amended the revenue division act and added §§ 21-30 (MCL

205.21-205.30; MSA 7.657[121]-7.657[130]), which *set forth procedures observed in assessing St. Clair and Livingstone.* See ns 18-21 for the text of §§ 21-23, and the opening sentences of § 25(1). It is clear that §§ 21 *et seq.* of the revenue division act replace and substitute for the repealed sections of the Use Tax Act and so much of § 10 as concerns assessment and collection other than the specific four-year statute of limitation of the Use Tax Act retained in § 10.

### III

That the reference in 1971 PA 161 is a misnomer is clear not only from the context but also on examination of an act signed the same day, 1971 PA 160, which added § 15(2) of the General Sales Tax Act—language, word for word, the same as use tax § 6(3). The last sentence of Act 160 added to § 15(2) language paralleling the language added to § 6(3) providing that the sum of such liability "may be assessed and collected as provided in section 11." Section 11 of the General Sales Tax Act *concerned the assessment and collection of that tax.* Section 11 was, together with other sections of the General Sales Tax Act concerning assessment and collection, repealed by 1980 PA 164, which was also tie-barred to the enactment of 1980 PA 162 adding §§ 21-30 to the revenue division act.

### IV

For the foregoing reasons, it is clear that the Legislature intended, when it referred in § 6(3) to § 17, to refer both to § 10 of the Use Tax Act as amended in 1949, and to the revenue division act, including added §§ 21-30.

V

Section 10 was amended in 1988 by 1988 PA
376, § 1. Although this amendment does not apply
to the instant case, the Legislature's action is a
guide in understanding its intent.

A

In so amending § 10, the Legislature repealed
the statute of limitation then contained in that
section. Two years before the 1988 amendment,
however, the Legislature added § 27a to the gen-
eral revenue provisions.[1] Section 27a contains a
statute of limitation, § 27a(2), applicable to all
taxes administered by the revenue division and
identical in relevant wording and substance to the
statute of limitation contained in use tax § 10(3).

The addition, in 1986, of the statute of limita-
tion contained in general revenue § 27a(2), and the
subsequent repeal of its duplicate, contained in use
tax § 10(3), suggests that the entirety of the proce-
dures set out in the general revenue provisions
should be read as governing the administration of
the Use Tax Act.

B

Section 27a contains a provision, § 27a(5), also
governing all taxes administered by the revenue
division, making corporate officers personally lia-
ble for failure to pay taxes. This section is similar
to § 6(3) of the Use Tax Act. We may anticipate
the future repeal of § 6(3) to eliminate the remain-
ing duplicity.

Section 27a(5), the successor to § 6(3), does not
contain the reference to § 17. Section 27a(5) con-

[1] 1986 PA 58, § 1, MCL 205.27a; MSA 7.657(27a).

cludes: "The sum due for a liability may be assessed and collected under the related sections of this act." The Legislature has thus resolved any confusion engendered by the erroneous reference to § 17. The Legislature has clarified its intent that the general revenue provisions governing assessment and collection, including the statute of limitation contained in § 27a(2), shall be followed by the department in seeking to enforce the personal liability of a responsible officer.

C

The author of the concurring opinion asserts that the instant case will have limited value in light of the differences in statutory language between general revenue provision § 27a and its predecessor Use Tax Act § 10(3). While there are differences between the original and the revised statutes of limitation, I can discern no reason why these differences should affect the reading or meaning of the language.